United States Court of Appeals, Eleventh Circuit.

No. 95-4395.

SCULPTCHAIR, INC., Plaintiff-Appellant,

v.

CENTURY ARTS, LTD., Defendant,

Chair Decor, Etc., formerly Sculptchair/Canada, Deena Rich, individually, Benny Bien, individually, Mary Bien, individually, Phyliss Rich, individually, Defendants-Appellees.

Sept. 6, 1996.

Appeal from the United States District Court for the Southern District of Florida. (No. 94-6448-CIV-WJZ), William J. Zloch, Judge.

Before EDMONDSON, Circuit Judge, and FAY and GIBSON[*], Senior Circuit Judges.

FLOYD R. GIBSON, Senior Circuit Judge:

Sculptchair appeals the district court's order dismissing its complaint against defendants Century Arts, Ltd., Chair Decor, Etc., Chair Decor, Etc., of Sunrise, Florida, Benny Bien, Mary Bien, Phyliss Rich, and Deena Rich for lack of personal jurisdiction. We affirm in part and reverse and remand in part.

I. BACKGROUND

Michael Kelldorf, the inventor and United States patent holder for a type of chair cover, is the owner and president of Sculptchair, Inc. ("Sculptchair"), a Florida corporation that owns the United States and Canadian trademark for "Sculptchair" and markets, sells, and leases these chair covers under that name. In late 1990, Benny Bien, a resident of Canada, contacted Kelldorf seeking to obtain an exclusive licensing agreement to manufacture

_____

[*]Honorable Floyd R. Gibson, Senior U.S. District Judge for the Eighth Circuit, sitting by designation.

and market the chair covers in Canada under the "Sculptchair" name. After numerous telephone conversations, Benny Bien, his wife Mary Bien, and her sister Phyliss Rich, both of whom are also residents of Canada, traveled to Florida for a one-hour meeting in which the terms of the deal were finalized.

The contract granted an exclusive license to manufacture, use, sell, and lease the chair covers under the "Sculptchair" name in Canada to Century Arts, Ltd. ("Century Arts"), a Canadian corporation of which Mary Bien and Phyliss Rich were the sole officers, directors, and shareholders. In exchange, Century Arts agreed to pay Sculptchair a monthly fee. Benny Bien financed Century Arts, but owned no stock therein and served Century Arts in no official capacity. In February of 1991, Sculptchair signed the agreement in Florida and forwarded it to Century Arts in Canada, where it was signed by Phyliss Rich as President of that corporation. Benny Bien also signed the agreement as a witness. Neither Mary Bien nor Phyliss Rich ever signed the contract in their individual capacities.

In March of 1991, Phyliss Rich traveled to Florida for a four day logistical meeting with Kelldorf. The deal soon went south just as quickly. Century Arts began experienced difficulties with the maintenance and performance of Sculptchair's design. In December of 1991, Mary Bien and Phyliss Rich traveled to Florida to discuss these issues with Kelldorf, but were unable to reach a solution. Century Arts soon ceased making the required monthly payments, and Sculptchair terminated the agreement in April of 1991 for nonpayment of fees. Benny Bien subsequently obtained a

judgment against Century Arts for the value of his financing, and the corporation was dissolved shortly thereafter.

Following the dissolution of Century Arts, Mary Bien and Phyliss Rich formed a second corporation, Chair Decor, Inc. ("Chair Decor of Canada"), another Canadian corporation which also marketed chair covers. Once again, Mary Bien and Phyliss Rich served as its sole officers, directors, and shareholders. In May of 1994, Sculptchair filed suit against Chair Decor of Canada for patent infringement in violation of 35 U.S.C. § 271 (1993), trademark infringement in violation of 15 U.S.C. § 1114 (1993), unfair competition in violation of 15 U.S.C. § 1125(a) (1993), and breach of contract in the United States District Court for the Southern District of Florida. The complaint also named Benny Bien, Mary Bien, Phyliss Rich, and her daughter, Deena Rich, another resident of Canada, in their individual capacities, as well as an entity designated as "Chair Decor of Sunrise, Florida." On July 8, 1994, the defendants moved to dismiss the complaint for lack of personal jurisdiction. Following a lengthy evidentiary hearing and the submission of numerous affidavits, the district court granted defendants' motion and dismissed Sculptchair's complaint. Sculptchair appeals.

II. DISCUSSION

In order to determine whether the district court has personal jurisdiction over the nonresident defendants in this case, we must undertake a two-part analysis. First we must determine whether the Florida long-arm statute provides a basis for personal jurisdiction. If so, then we must determine whether sufficient

minimum contacts exist between the defendants and the forum state so as to satisfy "traditional notions of fair play and substantial justice" under the Due Process Clause of the Fourteenth Amendment. *Robinson v. Giarmarco & Bill, P.C.,* 74 F.3d 253, 256 (11th Cir.1996) (quoting *International Shoe v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quotation omitted)). We review the district court's dismissal for lack of personal jurisdiction de novo. *Olivier v. Merritt Dredging Co., Inc.,* 979 F.2d 827, 830 (11th Cir.1992), *cert. denied,* 507 U.S. 983, 113 S.Ct. 1577, 123 L.Ed.2d 145 (1993).

A. The Florida Long-Arm Statute

When jurisdiction is based on a federal question arising under a statute that is silent regarding service of process, Rule 4(e) of the Federal Rules of Civil Procedure directs us to look to the state long-arm statute in order to determine the existence of personal jurisdiction. *Cable/Home Communication v. Network Prod's,* 902 F.2d 829, 855 (11th Cir.1990). In this case, neither 35 U.S.C. § 271, nor 15 U.S.C. §§ 1114 or 1125(a) contain such service of process provisions. As a result, we look to the Florida long-arm statute in order to determine whether the district court may assert personal jurisdiction over the nonresident defendants. "Since the extent of the long-arm statute is governed by Florida law, federal courts are required to construe it as would the Florida Supreme Court." *Id.* at 856 (quotation omitted). Absent some indication that the Florida Supreme Court would hold otherwise, we are bound to adhere to decisions of its intermediate courts. *Polskie Linie Oceaniczne v. Seasafe Transp. A/S,* 795 F.2d 968, 970 (11th

Cir.1986).

Florida's long-arm statute is to be strictly construed. *Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.,* 701 F.2d 889, 891 (11th Cir.1983). Under Florida law, the plaintiff bears the burden of proving personal jurisdiction: "When a defendant raises through affidavits, documents or testimony a meritorious challenge to personal jurisdiction, the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents." *Jet Charter Serv., Inc. v. Koeck,* 907 F.2d 1110, 1112 (11th Cir.1990), *cert. denied,* 499 U.S. 937, 111 S.Ct. 1390, 113 L.Ed.2d 447 (1991). Florida's long-arm statute, Fla.Stat. ch. 48.193 (1993), provides in relevant part:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself ... to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

> (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state....

> (f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

> 1. The defendant was engaged in solicitation or service activities within this state; or

> 2. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

> (g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

Sculptchair asserts personal jurisdiction over each of the defendants under varying combinations of these three subsections.

We address each subsection *seriatim.*

1. Carrying on a Business or Business Venture in Florida

Sculptchair first asserts personal jurisdiction over Chair Decor of Canada, Benny Bien, Mary Bien, Phyliss Rich, Deena Rich, and Chair Decor of Sunrise, Florida via section 48.193(1)(a), which provides for personal jurisdiction over defendants who are "carrying on a business or a business venture" or have an office or agency in Florida.  In order to establish that a defendant was carrying on a business or business venture in the state, either itself or through an agent, "[t]he activities of the [defendant] sought to be served ... must be considered collectively and show a general course of business activity in the State for pecuniary benefit."  *Dinsmore v. Martin Blumenthal Associates, Inc.,* 314 So.2d 561, 564 (Fla.1975).

Deena Rich admittedly operated as an independent contractor and sporadic sales representative for Chair Decor of Canada in her spare time while attending school in Florida.  While most of her sales were based strictly on word of mouth, Deena Rich admitted that she had circulated a price list to ten or so individuals describing Chair Decor of Canada's product line and bearing the number of a local telephone answering machine.  She also testified that she had traveled to four or five Florida businesses and had given them product presentations.  When a potential customer would leave a message, she would forward the order to Chair Decor in Canada where it would be filled.  Deena Rich maintained no regular office, maintained no inventory, and received no regular salary, her salary consisting solely of commissions.  Deena Rich's total

sales efforts amounted to three to five transactions grossing an estimated $3,000. Although her sales efforts were sporadic at best and the revenue generated therefrom was relatively insignificant, we are left with the inescapable conclusion that her marketing efforts, viewed collectively, qualify as a general course of business activity in Florida for pecuniary benefit. *See Bank of Wessington v. Winters Gov't Sec. Corp.,* 361 So.2d 757, 759-60 (Fla.Dist.Ct.App.1978) (out-of-state bank's solicitation of ten oral contracts for the sale of insurance qualified as "carrying on a business" in Florida).

Applying the same standard, we conclude that neither Benny Bien, Mary Bien, nor Phyliss Rich were carrying on a business or business venture in Florida. None of these individuals manufactured, sold, leased, or solicited orders for chair covers or any other products in Florida. They maintained no offices or agents in the state. Benny Bien's sole activities in Florida amounted to a series of telephone conversations with Kelldorf's Florida office and a one-hour meeting to facilitate a contract to be performed wholly in Canada to which he was not even a party. We have no difficulty concluding that Benny Bien's limited intermediary activities fail to qualify as carrying on a business or business venture in Florida. Mary Bien's contacts with the State of Florida are limited to two brief logistical meetings with Kelldorf. Her sister's contacts with Florida consist of three such meetings. We need not determine whether these slightly more extensive entanglements would rise to the level of carrying on a business or business venture in Florida because it is apparent that

the two sisters were acting in their corporate representative capacities as opposed to their individual capacities.

> While a corporation itself may be subject to jurisdiction when it transacts business through its agents operating in the forum state, unless those agents transact business on their own account in the state, as opposed to engaging in business as representatives of the corporation, they are not engaged in business so as to be individually subject to the state's long-arm statute.

*Excel Handbag Co. v. Edison Bros. Stores,* 428 So.2d 348, 350 (Fla.Cir.Ct.App.1983). Consequentially, Mary Bien and Phyliss Rich are not individually subject to the Florida long-arm statute for carrying on a business or business venture based on their strictly corporate acts.

We similarly conclude that the entity designated as Chair Decor of Sunrise, Florida (as opposed to Chair Decor of Canada), was not carrying on a business or business venture in Florida. Moreover, we conclude that this entity never existed. Kelldorf and Sam Hill, Sculptchair's national sales manager, both testified that they attended a meeting at a Boca Raton office in May of 1994 posing as representatives of "Simon the Pie Man" where a Chair Decor employee named Rachel Stern gave them a product presentation. Both Rachel Stern and Deena Rich, however, testified that Rachel Stern, a self-employed graphic artist, was never an employee of Chair Decor, but merely a personal friend of Deena Rich who agreed to meet with Kelldorf and Hill at her Boca Raton office as a favor to Deena Rich, who was in Toronto at the time. In addition, Mary Bien and Phyliss Rich each testified that Chair Decor of Canada maintains no offices in Florida or anywhere else outside Canada. Because there is no evidence that the entity identified by

Sculptchair as "Chair Decor of Sunrise, Florida" was ever in existence, we correspondingly find no basis for asserting jurisdiction over it under the Florida long-arm statute.

Because there is no evidence that Chair Decor of Canada ever directly manufactured, sold, leased, or solicited orders for chair covers or any other products in Florida, the question of whether Chair Decor of Canada was ever carrying on a business or business venture in Florida necessarily hinges on whether Deena Rich's activities may be attributed to Chair Decor of Canada as its agent in Florida. *Pesaplastic, C.A. v. Cincinnati Milacron Co.,* 750 F.2d 1516, 1521-22 (11th Cir.1985). Under Florida law:

> The existence of a true agency relationship depends on the degree of control exercised by the principal. Generally, a contractor is not a true agent where the principal controls only the outcome of the relationship, not the means used to achieve that outcome.

*Dorse v. Armstrong World Indus.,* 513 So.2d 1265, 1268 n. 4 (Fla.1987). The facts in this case indicate that Deena Rich was acting as an independent contractor as opposed to an agent. There is no evidence whatsoever that Chair Decor of Canada exercised any type of meaningful control over the means employed by Deena Rich to market the product line. In fact, she set her own hours and chose her own marketing methods, relying principally on word of mouth. Deena Rich herself characterized her own position as that of an independent contractor, and we agree. As a result, we conclude that Chair Decor of Canada was not carrying on a business or business venture in Florida either through the acts of Deena Rich or otherwise within the meaning of subsection (a) of the Florida long-arm statute.

2. Causing Injury to Persons or Property Within Florida

Sculptchair next argues that the defendants caused it economic injury under section 48.193(1)(f)(1) and (2) by their soliciting and/or marketing efforts in Florida. It is well-established, however, that mere economic injury without accompanying personal injury or property injury does not confer personal jurisdiction over nonresident defendants under section 48.193(1)(f). *Sun Bank, N.A. v. E.F. Hutton & Co.,* 926 F.2d 1030, 1033 (11th Cir.1991) (citing *Aetna Life & Casualty Co. v. Therm-O-Disc, Inc.,* 511 So.2d 992, 993-94 (Fla.1987)). Because Sculptchair has neither alleged nor proven personal injury or property damage aside from the purely economic loss pleaded in its complaint, we find no basis for asserting personal jurisdiction over any of the defendants under section 48.193(1)(f).

3. Breaching a Contract in Florida

Sculptchair next seeks to invoke section 48.193(1)(g), which provides for personal jurisdiction over persons breaching a contract within Florida by failing to perform acts required by the contract to be performed in Florida, as a means of invoking personal jurisdiction over Chair Decor of Canada, Benny Bien, Mary Bien, and Phyliss Rich. Specifically, it claims that these defendants breached Paragraph Eleven of the exclusive licensing agreement by marketing similar chair covers. That provision essentially forbids "the Principals [Mary Bien and Phyliss Rich] and Benny Bien" from manufacturing, leasing, selling, or marketing "chair covers or any product similar to the chair covers in Canada or elsewhere, except as permitted under the terms of this

agreement."[1]

This argument overlooks the salient fact that none of the defendants were a party to that particular contract, making it difficult for them to breach its terms. The contract was between Sculptchair and Century Arts exclusively. As the very first clause of the agreement states, "THIS AGREEMENT is made between SCULPTCHAIR, INC. ... and CENTURY ARTS, LIMITED." While Phyliss Rich signed the contract, it is undisputed that she did so on behalf of Century Arts in her official capacity, not in her individual capacity. It is further undisputed that Benny Bien signed the agreement as nothing more than a witness. Mary Bien never signed the contract in any capacity whatsoever.

Nonetheless, Sculptchair seeks to estop Benny Bien from denying that he was party to the contract on the basis that his conduct reasonably led Sculptchair to believe that he had adopted

---

[1] *11. Agreement by Principals.* Century represents to Sculptchair that the individuals who are principals of Century and who will be responsible for manufacturing, leasing and sale of the chair covers in Canada are Mary Bien and Phyliss Rich (the Principals). Each of the Principals and *Benny Bien* each joins in the execution of this agreement for the purpose of agreeing that none of the principals or Benny Bien, acting together or separately, will manufacture, cause to be manufactured, lease, sell or market chair covers or any product similiar [sic] to the chair covers in Canada or elsewhere, except as permitted under the terms of this agreement. This agreement by the Principals and *Benny Bien* is a material consideration to Sculptchair for execution of this agreement and granting the rights granted hereunder. This agreement [sic] by the Principals and Benny Bien will survive the termination of this agreement for any reason and will be enforceable by injunction or other equitable remedy without restricting the right of Sculptchair to seek damages from each of the Principles and/or *Benny Bien* violating the terms of this agreement.

the contract as his own. "Under Florida law, a party who appears bound by a contract may be estopped from denying his obligations under the contract as against one who has relied on that appearance." *Pinnacle Port Community Ass'n. v. Orenstein,* 872 F.2d 1536, 1545 (11th Cir.1989) (citing *Ayala v. Murrell,* 97 So.2d 13, 15 (Fla.1957)). "[T]his doctrine requires no more reliance than a party perform under the contract that the other party has apparently adopted." *Orenstein,* 872 F.2d at 1545 (footnote omitted). There are two problems with the application of this doctrine to the instant case: First, there is no indication that Benny Bien did anything that would remotely have lead Sculptchair to reasonably believe that he was a party to the contract. His signature appears solely in the capacity of a witness. Aside from opening negotiations between Century Arts and Sculptchair, Benny Bien took no part whatsoever in the active management of Century Arts or the execution of the agreement, remaining instead passively in the background in his role as financier. Sculptchair has come forward with no evidence that Benny Bien adopted the contract as his own by performing its terms or tricked Sculptchair into believing he was a party thereto. In addition, Sculptchair failed to reasonably rely on his conduct by continuing to perform under the contract. Once the monthly payments stopped, Sculptchair promptly terminated the agreement for nonpayment. If Benny Bien's personal guarantee really was a material consideration for entering into the contract as Sculptchair claims, it should have insisted that he sign the contract as a party thereto instead of merely seeking to bind him by invoking his name in Paragraph Eleven.

Finally, Sculptchair contends that Chair Decor of Canada should be bound by the terms of Century Arts' contract as its corporate successor in interest under Florida's "mere continuation of business doctrine." We agree. "The concept of continuation of business arises where the successor corporation is merely a continuation or reincarnation of the predecessor corporation under a different name." *Amjad Munim, M.D., P.A. v. Azar,* 648 So.2d 145, 154 (Fla.Dist.Ct.App.1994). A "mere continuation of business" will be found where one corporation is absorbed by another, as evidenced by an identity of assets, location, management, personnel, and stockholders. While Mary Bien and Phyliss Rich deny that Chair Decor of Canada ever assumed any of Century Arts' liabilities or assets, there is an unmistakable identity of officers, directors, shareholders, and location in this particular case. Once Century Arts had been dissolved, its officers/directors/shareholders formed Chair Decor of Canada to market the same type of product out of the same address but without the contractual obligations of its predecessor corporation. Chair Decor of Canada assumed Century Arts' modus operandi and apparently remained in contact with its former clients. Because these facts indicate that Chair Decor of Canada is nothing more than Century Arts operating under a new name, we hold Chair Decor of Canada to the continuing contractual obligations undertaken by its corporate predecessor in interest. As such, we conclude that Sculptchair has met its burden of proving personal jurisdiction over Chair Decor of Canada under section 48.193(1)(g).

B. Due Process

Having determined that the reach of the Florida long-arm statute extends to Deena Rich and Chair Decor of Canada, we next engage in a two-part inquiry in order to determine whether that reach comports with due process. First, we must determine whether Deena Rich and Chair decor have established sufficient "minimum contacts" with the state of Florida. Second, we must decide whether the exercise of this jurisdiction over her would offend "traditional notions of fair play and substantial justice." *Robinson,* 74 F.3d at 258 (quoting *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158).

1. Minimum Contacts

Minimum contacts involve three criteria: First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve some purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws. Finally, the defendant's contacts within the forum state must be such that she should reasonably anticipate being haled into court there. *Francosteel Corp. v. M/V Charm,* 19 F.3d 624, 627 (11th Cir.1994).

We believe sufficient minimum contacts exist to justify haling Deena Rich into a Florida court. There can be no legitimate dispute that Deena Rich's marketing activities in the state of Florida are intimately connected to Sculptchair's causes of action. It is equally apparent that she purposefully availed herself of the privilege of conducting business in Florida by marketing Chair Decor of Canada's products in the state. Finally, this type of

marketing is the kind of activity that would lead a person to reasonably expect the possibility of ensuing litigation in a Florida court should some type of dissatisfaction or complications arise.

We find Chair Decor of Canada's contacts with Florida effectively indistinguishable from those found sufficient by the Supreme Court in *Burger King v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In determining whether a Florida court could constitutionally exercise personal jurisdiction over a dispute arising from a franchise agreement between a Florida corporation and a resident of Michigan, the Supreme Court considered not only the contract itself, but "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* at 479, 105 S.Ct. at 2185. Like the defendant franchisee in *Burger King,* Chair Decor of Canada "reached out" beyond the borders of Canada and entered into a carefully structured long-term agreement envisioning "continuing and wide-reaching contacts" with Sculptchair in Florida by seeking the exclusive licensing agreement. *Id.* at 479-80, 105 S.Ct. at 2185-86 (quotation omitted). Like the defendant franchisee in *Burger King,* Chair Decor of Canada's contacts can in no way be considered "random," "fortuitous," or "attenuated." *Id.* at 480, 105 S.Ct. at 2186 (quotations omitted). Similarly, it was reasonably foreseeable that Chair Decor of Canada's alleged breach of the exclusive licensing agreement and infringement on Sculptchair's patent and trademark rights was likely to lead to litigation in a Florida

court. *Id.* Paragraph 8(b) of the exclusive licensing agreement, which provides that all disputes arising thereunder shall be governed by Florida law in a Florida court, further reinforces Chair Decor of Canada's "deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there." *Id.* at 482, 105 S.Ct. at 2187.

2. Fair Play and Substantial Justice

Having determined that Deena Rich and Chair Decor of Canada have established sufficient minimum contacts with Florida, we must next consider whether the exercise of personal jurisdiction over them comports with "fair play and substantial justice." *Id.* at 476, 105 S.Ct. at 2184, (quoting *International Shoe,* 326 U.S. at 320, 66 S.Ct. at 160). Relevant factors include "the burden on the defendant, the interests of the forum ..., and the plaintiff's interest in obtaining relief." *Asahi Metal Indus. Co. v. Superior Court of California,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1987).

We are mindful that "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Id.* at 114, 107 S.Ct. at 1033. These burdens are relatively uncompelling in this case, however. Although she is a permanent resident of Canada, Deena Rich has been temporarily residing in Boca Raton, Florida, for several years while attending school and plans to establish a permanent residence in Florida soon. While Chair Decor of Canada's officers/directors/shareholders currently

reside in Toronto, modern methods of transportation and communication have significantly ameliorated its burden. *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). Counterweighted by Florida's obvious interest in stamping out the type of nefarious economic chicanery alleged in Sculptchair's complaint and Sculptchair's natural interest in obtaining relief for these alleged injustices, we have no difficulty concluding that the exercise of personal jurisdiction over Deena Rich and Chair Decor of Canada comports with traditional notions of substantial justice and fair play. *See Asahi,* 480 U.S. at 114, 107 S.Ct. at 1033 ("When minimum contacts have been established, often the interests of the plaintiff and the forum ... will justify even the serious burdens placed on the alien defendant.").

III. CONCLUSION

We conclude that the district court has personal jurisdiction over Deena Rich and Chair Decor of Canada. Accordingly we REVERSE the judgment of the district court with respect to Deena Rich and Chair Decor of Canada and REMAND for further proceedings consistent with this opinion. We AFFIRM the order of the district court in all other respects.