Brandy S. SCOTT, Plaintiff,

v.

**PLAQUES UNLIMITED, INC., a dissolved Florida Corporation with no known Directors, Miles F. Pewitt, as the last known Director of Fumi & Miles, Inc., a dissolved Florida Corporation, Studyworks, Inc., a Maryland Corporation, Miles F. Pewitt, Individually, Miles F. Pewitt d/b/a Plaques Unlimited, Inc., Miles F. Pewitt d/b/a Fumi & Miles, Inc., Miles F. Pewitt d/b/a Studyworks, Inc., and Robert Hinchliffe, individually, Defendants.**

No. 98–1409–CIV–T–17E.

United States District Court,
M.D. Florida,
Tampa Division.

April 20, 1999.

Irene H. Sullivan, Kristin A. Demers, Harris, Barrett, Mann & Dew, St. Petersburg, FL, Caryl E. Delano, Harris, Barrett, Mann & Dew, L.L.P., Tampa, FL, for plaintiff.

Mark A. Hanley, Richard L. Bradford, Thompson, Sizemore & Gonzalez, P.A., Tampa, FL, for defendants.

## *ORDER*

KOVACHEVICH, Chief Judge.

This cause is before the Court on Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt.10) and Plaintiff's Response to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt.14). The Court will also consider Defendant's Motion to Dismiss for Failure to State a Claim upon which Relief can be Granted (Dkt.10) and Plaintiff's Response to Defendant's Motion to Dismiss for Failure to State a Claim upon which Relief can be Granted (Dkt.14).

### *FACTS*

Plaintiff brings a Title VII claim, alleging sex discrimination regarding her employment at Defendant Plaques Unlimited, Inc., et al. A recitation of Plaintiff's employment history is relevant in determining whether to grant Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Defendant's Motion to Dismiss for Failure to State a Claim upon which Relief can be Granted.

Plaintiff is a female who was eighteen years of age throughout her employment with Plaques Unlimited, Inc. In September, 1997, Plaintiff began her employment with Defendant as a telemarketer, at the rate of $6.50 per hour. Plaintiff obtained the position after an interview with Defen-

dant Hinchliffe, and upon the recommendation of her boyfriend, Michael Hutchinson, who was also employed by Defendant Plaques Unlimited.

During Plaintiff's first month of employment, she performed her duties well and developed a pleasant working relationship with Hinchliffe, Plaintiff's immediate supervisor.

In October, 1997, Plaintiff asserts she was subjected to unwelcome sexual conduct and other harassment and abuse in the workplace, including but not limited to, the following abuses:

(a) Hinchliffe began making personal comments about how attractive Plaintiff looked or how her legs looked. Hinchliffe commented on Plaintiff's clothes, weight, and hair. He told Plaintiff she was "so thin" and that she had "gorgeous hair." On one occasion, Hinchliffe inappropriately rubbed Plaintiff's shoulders.

(b) On another occasion, Plaintiff found Hinchliffe and a customer looking at pornography on the Internet. Another time, Plaintiff found a Playboy magazine in Hinchliffe's office.

(c) Hinchliffe once told Plaintiff that other women who had Plaintiff's position before her had performed sexual favors for the owner, Pewitt, and that Pewitt had even paid for a former secretary's breast implants.

(d) Hinchliffe inquired into the type of relationship that existed between Plaintiff and Mr. Hutchinson. Hinchliffe frequently attempted to drive Plaintiff and Mr. Hutchinson apart by inciting arguments between them. Hinchliffe criticized how Mr. Hutchinson treated Plaintiff, and assured her that he would treat her much better, including sexually.

Plaintiff asserts she was embarrassed and humiliated by Hinchliffe's abusive behavior, but felt she needed the job to support her infant daughter. Plaintiff attempted to put a stop to Hinchliffe's sexual harassment by dressing down at work, wearing long pants and skirts. Plaintiff claims she tried to unwelcome the harassment by looking upset or annoyed and attempting to avoid him altogether. Hinchliffe talked to Plaintiff about "crazy sex" and discussing his relationship with his wife.

In January, 1998, Plaintiff claims the harassment became even more offensive. Hinchliffe made comments to Plaintiff such as, "I just want to lick you up and down," while staring at her every time he was near her. He also promised to give Plaintiff a raise, but never did. Hinchliffe told Plaintiff that Pewitt was considering firing her, but assured her, "as long as you do what I tell you to, you won't be fired."

On February 20, 1998, Pewitt was discussing in front of Plaintiff the need for a "show girl" for an upcoming Las Vegas trade show, and how difficult it was to find one at the last minute. Plaintiff claims she felt she was being pressured into volunteering for the "show girl" position, and that she might lose her job if she did not agree,. and asked Pewitt if he wanted her to attend the trade show. However, Plaintiff claims she specifically requested that Pewitt not put her in the same hotel where Hinchliffe would be staying.

Pewitt asked Plaintiff if she had any "low cut, sexy business outfits" and gave her money to buy a slinky dress, have her nails done, "get a tan" and that he would pay for everything. He asked Plaintiff if she could "get a fake I.D." because "Las Vegas is no fun if you don't drink." Plaintiff asserts that she reluctantly telephoned her older sister, and asked if she could use her I.D. Plaintiff's sister agreed when Pewitt gave her the company's Federal Express account number so she could overnight her drivers license to his hotel in Las Vegas.

On February 23, 1998, Plaintiff checked into her hotel and was given two keys to her room. However Pewitt told her he would keep one key because he felt Plain-

tiff would lose hers. On February 24, 1998, Pewitt arranged to meet Hinchliffe at a bar. Pewitt told Plaintiff to wear the dress he had purchased for her because it looked good and made her look older. That evening, Plaintiff felt pressured to drink when Pewitt and Hinchliffe purchased alcohol for her, including shots, wine, and hard liquor beverages.

On February 25, 1998, at dinner Hinchliffe attempted to rub Plaintiff's legs and feet under the table. On February 26, 1998, Hinchliffe told Plaintiff, "I just want to grab your ass."

When Plaintiff informed Pewitt that Hinchliffe had sexually harassed her, and suggested that Hinchliffe's sexual advances were unwelcome and that Pewitt should put a stop to it, Pewitt responded, "Well, Brandy, you have to expect those things and use them to your advantage."

Pewitt told Plaintiff that things were slow at the trade show, and that she needed to flirt with the customers. He showed Plaintiff how to bend over and pick something up without bending her knees and told her to dust the plaques that were higher up in order to show off her legs and stick her chest out when she spoke to customers. Pewitt also told Plaintiff they were meeting with a Japanese customer and to "just giggle at whatever the man said" because Pewitt loved the way Plaintiff giggled.

Upon returning to Florida after the trade show, Plaintiff claims she was scared, humiliated, ashamed, and in a virtual state of shock due to the above mentioned events. Plaintiff also asserts she was physically, psychologically, and emotionally unable to return to any work environment in which Pewitt or Hinchliffe would be present. Consequently, Plaintiff resigned from her employment with Defendants.

On March 4, 1998, Plaintiff filed written charges of discrimination and sexual harassment with the Equal Employment Opportunity Commission, Charge # 151980620, and a charge of retaliation directly based on her filing of EEOC Charge # 151980620 on April 17, 1998. On April 7, 1998, the EEOC issued a Notice of Right to Sue.

Since Plaintiff filed her charge with the EEOC, Pewitt has threatened to see to it that Plaintiff lose custody of her child by having Plaintiff declared an unfit mother. Pewitt has also threatened to make sure that civil and criminal action is taken against Plaintiff and Mr. Hutchinson if Plaintiff pursues her sexual harassment claim against Pewitt and his companies. Finally, Plaintiff claims that Defendants, their agents and employees falsely informed Plaintiff that Defendant received a letter from Plaintiff's attorneys stating that they no longer intended to pursue Plaintiff's sexual harassment claim.

On July 6, 1998, Plaintiff Brandy Scott filed a complaint in this Court, (Dkt.1), against multiple Defendants including Defendants Pewitt and Hinchliffe. On July 27, 1998, these Defendants filed a Motion to Dismiss for Lack of Personal Jurisdiction and a Motion to Dismiss for Failure to State a Claim upon which Relief can be Granted with supporting memorandum (Dkt.10) which is now before the Court. On August 13, 1998, Plaintiff filed a response to the two motions to dismiss by Defendants.

Plaintiff's complaint asserts: 1) Quid Pro Quo Sexual Harassment (Federal and State), stating that Defendants, their agents and employees, engaged in a pattern and practice of discrimination based on sex; 2) Defendants, their agents and employees, subjected Plaintiff to unwelcome sexual conduct which pervaded the workplace to the extent that it altered the terms and condition of Plaintiff's employment, and created a hostile and abusive work environment; 3) Defendants, their agents and employees, subjected Plaintiff to sexual harassment, deliberately made Plaintiff's working conditions so intolerable that she was forced into an involuntary resignation; 4) Defendants, their agents

and employees, after learning that Plaintiff filed an EEOC charge of sexual discrimination against them, retaliated against Plaintiff by engaging in conduct that involved threatening the Plaintiff, and falsely informing Plaintiff that Defendant Hinchliffe received a letter from Plaintiff's attorney stating that they no longer intended to pursue Plaintiff's sexual harassment claim.

Defendants Plaques Unlimited, Miles F. Pewitt, Fumi & Miles, Incorporated, Studyworks Incorporated, and Robert Hinchliffe (collectively Defendants) move to dismiss all four counts of the complaint under Fed.R.Civ.P. 12(b)(2) and 12(b)(6) and Local Rule 3.01(a). As to Rule 12(b)(2), Defendants assert that this Court lacks personal jurisdiction over Defendant Studyworks, Incorporated as the Defendant does not have a constitutionally sufficient relationship with the forum. Defendants assert that Defendant Studyworks does not have minimum contacts with this forum, and the Defendant did not purposely avail itself to the privilege of conducting activities in the forum state.

As to Rule 12(b)(6), Defendants assert that Plaintiff fails to allege a claim upon which relief can be granted because: 1) There is no individual liability under Title VII, thus relief against Defendants Pewitt and Hinchliffe should be dismissed; 2) Defendants Fumi & Miles, Incorporated and Studyworks, Incorporated, should be dismissed because they are separate and distinct entities from Plaques Unlimited where Plaintiff was employed; and 3) Plaques Unlimited should be dismissed from this action because it does not qualify as an employer under Title VII and the FCRA, and therefore does not satisfy the jurisdictional prerequisite to filing suit under Title VII and the FCRA.

### STANDARD OF REVIEW

A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that Plaintiff can prove no set of facts that would entitle him to relief.

*Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A trial court, in ruling on a motion to dismiss, is required to view the complaint in the light most favorable to the Plaintiff and accept all allegations as true. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Such a motion should be granted only where the Plaintiff can prove no set of facts upon which relief could be granted. *National Organization for Women v. Scheidler,* 510 U.S. 249, 114 S.Ct. 798, 803, 127 L.Ed.2d 99 (1994) (citing *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)).

### DISCUSSION

### MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendant Studyworks, Incorporated, asserts that this Court lacks personal jurisdiction and that it should be dismissed from this action. However, this Court believes that an evaluation of the facts utilizing the Eleventh Circuit's two pronged analysis shows that the facts support this Court's personal jurisdiction over Studyworks, Incorporated. In *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623 (11th Cir.1996), the Eleventh Circuit stated the following as to personal jurisdiction:

In order to determine whether the district court has personal jurisdiction over the nonresident defendants in this case, we must undertake a two-part analysis. First we must determine whether the Florida long-arm statute provides a basis for personal jurisdiction. If so, then we must determine whether sufficient minimum contacts exist between the defendants and the forum state so as to satisfy "traditional notions of fair play and substantial justice" under the Due Process Clause of the Fourteenth Amendment.

*Id.* at 626.

■ Under the first prong, Plaintiff has alleged sufficient jurisdictional facts to

bring her action against Studyworks, Inc. within the ambit of Florida long-arm statute, Chapter 48.193 of the Florida Statutes (1997). The Florida long-arm statute provides a basis for personal jurisdiction in this case as follows:

> (1) Any person, whether or not a resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself ... to the jurisdiction of the court of this state for any cause of action arising from the doing of any of the following acts:
>
> (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

Plaintiff has satisfied this prong of the Eleventh Circuit's two-part analysis by alleging that Defendant Pewitt, the President, Treasurer, and Director of Studyworks, required Plaintiff to perform secretarial tasks for Studyworks, Inc., thereby assisting Defendant Pewitt in running the company from his Florida office. These tasks included answering daily telephone calls, taking messages, and purchasing supplies for producing advertisements, all related to Studyworks, Inc. Most importantly, it was during her employment for Studyworks, Inc. that Plaintiff alleges Plaintiff was sexually harassed.

The second prong of the two-part analysis is the requirement of due process. According to the Eleventh Circuit, this analysis consists of a two-part test inquiry: (1) whether Defendants have established sufficient "minimum contacts" with the state of Florida; and (2) whether the exercise of this jurisdiction over Defendants would offend "traditional notions of fair play and justice." *Sculptchair*, 94 F.3d at 630–31 (quoting *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

■ Defendant Studyworks, Inc. contends that Plaintiff fails to prove the minimum contacts requirement. However, the Court finds that Plaintiff sufficiently provided facts that support her allegations. There are three criteria that Plaintiff has satisfied:

> First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve some purposeful availment of the privilege of conducting activities within the forum thereby invoking the benefits and protections of its laws. Finally, the defendant's contacts within the Forum State must be such that she should reasonably anticipate being hauled into court there.

*Sculptchair*, 94 F.3d at 631.

First, Studyworks, Inc.'s contacts are closely connected to Plaintiff's causes of action. Plaintiff's job requirements, including answering daily phone calls, taking messages, and purchasing supplies for producing advertisements are all related to Studyworks, Inc. While performing these employment requirements, Plaintiff was allegedly sexually harassed and discriminated against by the Defendant Company. Therefore, Studyworks, Inc.'s contacts are closely related to this cause of action

Second, this Court agrees with Plaintiff's assertions that Defendant Studyworks, Inc. purposely availed itself to the privilege of conducting business in Florida by employing Plaintiff to answer phones, and purchase supplies. Further, this corporation availed itself of the laws of Florida by conducting business out of St. Petersburg, Florida when it produced 12,000 brochures, and engaged in frequent telephone conversations relating to Studyworks.

Finally, Plaintiff's employment to perform the abovementioned tasks is sufficient to allow a person to reasonably expect the possibility of litigation in a Florida court should some type of complication arise.

■ In determining fair play and substantial justice, the Court looks to relevant

factors to decide whether the exercise of personal jurisdiction is appropriate. These relevant factors include, "the burden on the defendant, the interests of the forum ... and the plaintiff's interest in obtaining relief." *Id.* (citing *Asahi Metal Indus. Co. v. Superior Court of Cal.,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)). The Court finds that the Defendant Studyworks, Inc. would face a minimal burden, if any, by being a party to this action. The President of the Corporation, Mr. Pewitt, already resides in the Forum State, and conducts his business at his office in St. Petersburg, Florida.

Alternatively, even if Studyworks, Inc. experienced a minimal burden, that burden would be substantially outweighed by the protection of Florida's Courts afforded sexually harassed citizens, specifically Plaintiff Brandy Scott. It is Plaintiff's objective to obtain relief from the Florida Court system.

When the abovementioned facts are viewed most favorably to the Plaintiff, the Court finds Plaintiff has adequately met the standard for establishing a prima facie showing of personal jurisdiction over Studyworks, Inc. and has satisfied the Eleventh Circuit's two-part test. The Court denies Defendant's Motion to Dismiss for Lack of Personal Jurisdiction.

### MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

■Defendants have addressed three areas in their Motion to Dismiss for Failure to State a Claim. The first area is the personal liability of Defendants Pewitt and Hinchliffe. Defendants assert that they cannot be sued in their individual capacities as employees, and therefore should be dismissed from this action. However, Plaintiff is not suing Pewitt and Hinchliffe as individual employees, but rather, as her employers. The Court finds that Plaintiff states that both Hinchliffe and Pewitt were in the position of employer at the time of the alleged harassment and could be held liable. Under *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991), "the proper method for a Plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly." Because Plaques Unlimited, Inc. is no longer in existence, Plaintiff must look to its owners or agents for liability.

■ Plaintiff has stated that it is unclear at this time in the suit whether Pewitt and Hinchliffe or just Pewitt is liable for Plaques Unlimited, Inc.'s actions. The Court agrees that at this time there are sufficient facts to name both as parties to the suit, as Plaintiff has stated that she has yet to discover if Plaques Unlimited, Inc. was solely owned by Pewitt, or if Pewitt and Hinchliffe were partners. Defendant Pewitt admits to being the owner of Plaques Unlimited, Inc.; it is certain that at least Pewitt could be a liable party. It is uncertain whether Hinchliffe could be a liable party. This Court should view the facts alleged in the light most favorable to the Plaintiff, and allow Plaintiff to continue discovery proceedings as Plaintiff has supplied this Court with ample indicia of Hinchliffe's involvement. Defendants' Motion to Dismiss for Failure to State a Claim upon which relief can be granted for these two individuals is **denied.**

■ The second area that Defendants have moved to dismiss is the joint employer relationship of Defendants Plaques Unlimited, Inc., Fumi & Miles, Inc., and Studyworks. The Court finds that the highly integrated ownership and operations of the three corporations is a factual issue. Plaintiff has acceptably provided facts that detail the integration of these three corporations, and the Court must view those facts in the light most favorable to Plaintiff.

Specifically, secretarial tasks, centralized control of labor relations, employment decisions, management, and Pewitt conducting business on behalf of all three

companies out of his St. Petersburg office are facts which support a finding of a joint employer relationship. Based on the specific showings that Plaintiff's responsibilities included the daily operations of Plaques Unlimited, Inc., Fumi & Miles, Inc., and Studyworks, Defendants' Motion to Dismiss as to the joint employer relationship of three corporations is **denied.**

The last area Defendants raise for dismissal is that Plaintiff's complaint fails to establish that Plaques Unlimited, Inc. is an employer under Title VII and the FCRA. After viewing the facts in the light most favorable to the Plaintiff, this Court will allow Plaintiff to proceed with this action in that she alleges Plaques Unlimited, Inc., Fumi & Miles, Inc. and Studyworks, Inc. collectively employed 15 or more employees for at least 20 weeks at all material times. Consequently, Defendants Motion to Dismiss is **denied.**

Viewing the complaint in the light most favorable to the Plaintiff, and accepting all allegations as true for the purposes of Plaintiff's Complaint, compels this Court to allow Plaintiff to conduct discovery in an attempt to prove the allegations. Further, it this Court's opinion that the Defendants have not shown that Plaintiff can prove no set of facts in support of her claim which would entitle her to relief. Accordingly, it is

**ORDERED** that Defendant's Motion to Dismiss for lack of personal jurisdiction (Dkt. 10, Part 1) is **denied.** Defendant's Motion to Dismiss for failure to state a claim upon which relief can be granted (Dkt. 10, Part 2) is **denied.**