PLEUS, J.
Viking Acoustical Corporation (“Viking”) challenges the order of the trial court granting Black Brothers Company’s (“Black”) motion to dismiss for lack of personal jurisdiction. We affirm because Viking failed to establish sufficient jurisdictional facts to invoke the trial court’s jurisdiction over Black under section 48.193(l)(g), Florida Statutes (1999).
The narrow issue on appeal is whether Viking properly alleged that a de facto merger occurred between Moneo Sales Corporation (“Moneo”) and Black sufficient to provide the trial court with in personam jurisdiction over Black. Moneo is a Florida corporation and Black is an Illinois corporation; both manufacture laminating equipment. Moneo is the alleged alter ego of Thomas and Jessie Potchen.
In 1995, Viking entered into an agreement with Moneo to purchase a laminating system and equipment for $146,500. Later that year, it purchased an improvement to the system for an additional $30,000. Viking paid Moneo in full. However, the equipment which it purchased did not work. In 1996, Moneo sold its business to Black in an asset sale. Ultimately, Viking brought the present suit in Florida against Black and others.
To survive Black’s motion to dismiss, Viking must allege a sufficient jurisdictional basis, for statutory long-arm jurisdiction and show that Black has sufficient minimum contacts with the state of Florida to satisfy the Fourteenth Amendment’s due process requirements. See Doe v. Thompson, 620 So.2d 1004 (Fla.1993); Venetian Salami Co. v. Parthenais, 554 So.2d 499 (Fla.1989). In Doe, the supreme court reiterated the dual-pronged inquiry used in determining whether Florida long-arm jurisdiction exists over a nonresident defendant. See Parthenais; O’Brien Glass Co. v. Miami Wall Systems, Inc., 645 So.2d 142 (Fla. 3d DCA 1994); Strideland Ins. Group v. Shewmake, 642 So.2d 1159 (Fla. 5th DCA 1994). First, the court must determine whether the plaintiffs complaint alleges sufficient jurisdictional facts to bring the action within the ambit of the long-arm statute. Second, it must determine whether there are sufficient minimum contacts between the defendant and Florida to satisfy the Fourteenth Amendment’s due process requirements. As to this latter factor, the court must determine whether the nonresident defendant should have reasonably anticipated being haled into court in Florida. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In order to so find, the defendant must have purposefully availed itself of the privilege of conducting some type of activity within Florida, thus invoking its benefits and protections. See Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. *634 1228, 2 L.Ed.2d 1283 (1958). “These minimum contacts must exist so as to satisfy the ‘traditional notions of fair play and substantial justice.’ ” Grogan v. Archer, 669 So.2d 289, 292 (Fla. 5th DCA 1996) [relying on International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ] [quoting Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1941) ].
If a plaintiff seeking to subject a nonresident defendant to Florida’s long-arm jurisdiction alleges sufficient jurisdictional facts, the burden shifts to the defendant to show compliance with the long-arm statute. Parthenais; Grogan; Holton v. Prosperity Bank of St. Augustine, 602 So.2d 659 (Fla. 5th DCA 1992). The defendant then carries the burden to make a prima facie showing of the inapplicability of the statute, after which the plaintiff is required to substantiate the jurisdictional allegations. Id. at 660. Where the defendant has filed one or more affidavits supporting a meritorious challenge, the plaintiff is required to rebut the affidavits with opposing affidavits, testimony or documents rather than simply allege facts which show “only a possibility of jurisdiction.” Id. at 661.
Viking asserts that Black is a proper party pursuant to section 48.193(l)(g) because Black was aware that Viking was a creditor of Monco’s and that Viking had a warranty claim against Moneo when it purchased the business. Further, Viking asserts that the asset sale between Moneo and Black was a de facto merger which merely constituted a continuation of Mon-co’s business under another name. Both Viking and Black filed affidavits to support their jurisdictional arguments.
Viking’s President, Bret Starkweather, filed an affidavit in which he alleged that Black had engaged in substantial business in Florida since at least 1994 and that its representatives had traveled to the state at least once a month and advertised to solicit new business. Starkweather listed the names of several companies with whom Black had allegedly conducted business and several publications in which it had allegedly advertised. Starkweather also alleged that (1) Moneo had ceased doing business after Black bought its assets; (2) Black’s acquisition of Monco’s assets was fraudulent and was, in fact, a de facto merger with that company; (3) Black knew Moneo was insolvent and knew about Viking’s creditor claim with Moneo before it bought Monco’s assets; (4) Moneo had signed a noncompetition agreement, governed by Illinois law, which prevented it from selling laminating systems and equipment; (5) Black had employed Thomas Potchen as an independent contractor; and (6) Black’s acquisition of Monco’s assets had been structured so the Potchens, rather than Moneo, would receive the sales proceeds. Thus, Starkweather maintained that Black, by its actions, had rendered it impossible for Viking to collect against Moneo.
In response, Robert Staehlewitz, Black’s Vice-President, also filed an affidavit. Staehlewitz alleged that (1) Black was an Illinois corporation; (2) its principal place of business was in Illinois; (3) it does not maintain an office in Florida; (4) it does not have employees who reside in Florida for business purposes; (5) it does not own real estate in Florida; (6) it does not maintain a bank account in Florida; (7) it does not have a telephone in Florida; (8) it does not maintain a post office box or otherwise receive mail in Florida; (9) it has never done business with Viking in Florida; (10) it was not required to file Florida Corporate Income/Franchise and Emergency Excise Tax Returns; and (11) it had purchased from Moneo “the rights to specific assets involved in the manufacture and sale of a line of laminating equipment” so it could “produce a laminating line similar to the line manufactured by Moneo,” including “the rights to a patent and drawings for the line of laminating equipment” and some “of the finished inventory from the laminating line.”
*635 Stachlewitz also alleged that (1) Black did not purchase from Moneo its real estate, buildings or fixtures, non-laminating line inventory, processing equipment, accounts receivables, computer equipment, office assets or company cars; (2) it did not purchase Monco’s entire business and continue it under Black’s name; (3) it has never sold any Moneo manufactured equipment, including laminating equipment; (4) it does not employ Monco’s employees; (5) there are no common shareholders between Black and Moneo; (6) it did not, after the transaction with Moneo, open an office in Florida; and (7) Moneo has never opened an office in Illinois.
Stachlewitz filed a second affidavit in which he denied that Black had any agents who traveled to Florida on a monthly basis or that it advertised there. He maintained that Black advertised in national publications but denied that its advertisements listed Florida contacts. He alleged that sales were periodically made in Florida “but they are very small — about 2% of total Black Bros, sales.” He contended that Black had engaged in business with only three of those businesses listed in Starkweather’s affidavit “and the total sale was a net negative $606.40. For 1998 and 1999, the total transactions with these companies totaled .6% of the total Black Bros, sales for the same period.” Sta-chlewitz again denied that Black had purchased all of Monco’s assets. Instead, he maintained that it had purchased “the right to produce a laminating line.” He denied that it had bought Monco’s “welders, lathes, mills, grinders, drills, chrome plating equipment, painting equipment and assembling equipment such as overhead cranes and material handling equipment” or a paper laminator and a temperature and humidity controlled room used to house the paper laminator.
Stachlewitz also alleged that Moneo had advised Black in writing that it had intended to continue its laminating business with its real estate, buildings and equipment, including its paper laminator. He referred to several provisions in the non-compete agreement between Black and Moneo which allowed Moneo to “manufacture and sell hot melt adhesives,” “laminate high pressure laminate and paper in Orlando for local and regional sales, including the use of a complete Moneo laminating line,” and “build six roll coaters to coat paper with hot melt adhesives.” Stachlewitz further denied that Black had employed any of Monco’s employees, with the exception of Thomas Potchen, whom he maintained was an independent contractor. Additionally, he alleged that Black had, before the sale, contacted some of Monco’s customers, including Viking, to inquire about any existing claims. According to Stachlewitz, Viking’s Production Manager, Tom Kraft, had indicated that Viking “had a few minor problems with the Moneo equipment, but nothing more than the usual start-up situations with new equipment.” Finally, Sta-chlewitz alleged that the sale between Black and Moneo had occurred in Illinois and was subject to Illinois law.
Viking contends that the allegations in its amended complaint and affidavit are sufficient to establish in personam jurisdiction over Black under section 48.198(l)(g). That section subjects a person, personally or through an agent, to Florida’s long-arm jurisdiction for breach of “a contract in this state by failing to perform acts required by the contract to be performed in this state.”
Specifically, as noted, Viking contends that Monco’s sale of its assets to Black was a defacto merger which subjected Black to Florida’s long-arm jurisdiction. It maintains that the de facto merger doctrine, an exception to the traditional corporate law rule that a corporation which buys another corporation is not hable for the liabilities of the corporation which it is buying, is applicable where the sales transaction between the corporations is a fraudulent effort to avoid the predecessor corporation’s liabilities. It contends that there is a factual issue as to whether a de facto merger occurred which should be resolved by the *636 trial court in an evidentiary hearing. See Tobacco Merchants Ass’n of the United States v. Broin, 657 So.2d 939 (Fla. 3d DCA 1995) (trial court should hold a limited evidentiary hearing to resolve disputed factual issues pertaining to jurisdiction).
Black argues in response that Viking failed to allege sufficient jurisdictional facts to bring its action within the ambit of the long-arm statute. It contends that a defacto merger occurs where
one corporation is absorbed by another, but without compliance with the statutory requirements for a merger. To find a de facto merger there must be continuity of the selling corporation evidenced by the same management, personnel, assets and physical location; a continuity of the stockholders, accomplished by paying for the acquired corporation with shares of stock; a dissolution of the selling corporation; and assumption of the liabilities. All of the events, such as dissolution, need not occur at the same time....
(Citations omitted). Amjad Munim, M.D., PA. v. Azar, M.D., 648 So.2d 145, 154 (Fla. 4th DCA 1994). See Serchay v. NTS Fort Lauderdale Office Joint Venture, 707 So.2d 958 (Fla. 4th DCA 1998). In arguing that no such merger exists here, Black further relies on Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623 (11th Cir.1996) in which the court found a de facto merger of a successor corporation, under the following circumstances: •
... While Mary Bien and Phyliss Rich deny that Chair Decor of Canada ever assumed any of Century Arts’ liabilities or assets, there is an unmistakable identity of officers, directors, shareholders, and location in this particular case. Once Century Arts had been dissolved, its officers/directors/shareholders formed Chair Decor of Canada to market the same type of product out of the same address but without the contractual obligations of its predecessor corporation. Chair Decor of Canada assumed Century Arts’ modus operandi and apparently remained in contact with its former clients. Because these facts indicate that Chair Decor of Canada is nothing more than Century Arts operating under a new name, we hold Chair Decor of Canada to the continuing contractual obligations undertaken by its corporate predecessor in interest. As such, we conclude that Sculptchair has met its burden of proving personal jurisdiction over Chair Decor of Canada under section 48.193(l)(g).
Id. at 630. See also McFadden Ford, Inc. v. Mancuso, 766 So.2d 241 (Fla. 4th DCA 2000); Hobbs v. Don Mealey Chevrolet, Inc., 642 So.2d 1149 (Fla. 5th DCA 1994).
Although Viking maintains that a de fac-to merger occurred when Black bought most of its assets, it failed to meet its burden of proving personal jurisdiction under that theory. Specifically, Black did not assume any of Monco’s liabilities. There is no identity of officers, directors or shareholders and the location of Black’s business is in Illinois rather than Florida. Black employed Thomas Potchen but only in the capacity of a consultant; Potchen has no control over the business. Moreover, it appears that Moneo has continued its business under a new name. We agree with the trial court that, based on the undisputed facts, a de facto merger did not occur.
Viking further contends that sufficient minimum contacts exist between Black and the state of Florida so as not to violate Black’s due process rights. It maintains that Black should reasonably have anticipated being haled into court in Florida because it merged with a Florida corporation and because it had sufficient minimum contacts in the state. See Industrial Cas. Ins. Co. v. Consultant Associates, Inc., 603 So.2d 1355 (Fla. 3d DCA 1992) (foreign corporation had sufficient minimum contacts with Florida to subject it to jurisdiction in this state where it contracted with a Florida corporation, performed its services in Florida and con *637 tracted to pay for its services in Florida); International Computer Solutions, Inc. v. St. James Club Antigua, 561 So.2d 1202 (Fla. 3d DCA 1990) (personal jurisdiction over foreign corporation could be obtained because it failed to pay Florida corporation for computer in Florida, as it had contractually agreed, and because it had otherwise sufficient minimum due process contacts with the state). Although Stark-weather’s affidavit contains conclusory allegations as to Black’s contacts in this state, those allegations were rebutted by Stachlewitz’s affidavits. Viking failed to produce any counterevidence substantiating its jurisdictional allegations in response, as required by the supreme court in Doe and Parthenais.
We conclude that Viking failed to show that a de facto merger occurred between Moneo and Black and that it also failed to show the necessary minimum contacts between Black and the State of Florida. We therefore affirm the trial court’s dismissal of the complaint against Black.
AFFIRMED.
SAWAYA, J., concurs.
THOMPSON, C.J., concurs in result only.