SHIP CONSTRUCTION & FUNDING SERVICES (USA), INC. d/b/a Colbert Group and Jacq. Pierot, Jr. & Sons, Inc., Plaintiffs,

v.

STAR CRUISES PLC d/b/a Star Cruises, Defendant.

No. 01–248–Civ–KING.

United States District Court, S.D. Florida, Miami Division.

Nov. 21, 2001.

Robert Ader, Law Office of Robert Ader, P.A., Miami, FL, for plaintiff.

Bruce Berman, Diane O. Fischer, Michael Austin, McDermott, Will & Emery, Miami, FL, for defendant.

## *ORDER GRANTING IN PART AND DE-NYING IN PART DEFENDANT'S MOTION TO DISMISS*

JAMES LAWRENCE KING, District Judge.

THIS CAUSE is before the Court upon Defendant's Motion to Dismiss filed March 30, 2001. Plaintiffs filed a Response on July 9, 2001. Defendant filed a Reply on August 9, 2001. The Court held a hearing on the motion on October 9, 2001.

### I. Background

Plaintiffs Florida-based Ship Construction & Funding Services (USA), Inc. d/b/a Colbert Group ("Colbert") and New York-based Jacq. Pierot, Jr. & Sons, Inc. ("Pierot") provide consultation regarding negotiating mergers, takeovers, joint ventures and related consultative and brokering services to various components of the shipping industry. (Second Am.Compl. ¶ 9.) On June 23, 1998, Plaintiffs together with non-party HSBC Ship Broker's Ltd. ("HSBC") entered into a one-page contract with Defendant Hong Kong-based Star Cruises PLC d/b/a Star Cruises ("Star") titled "Passenger Cruise Vessels [sic] 'Superstar Virgo'" (the "Contract"). (Second Am.Compl. ¶ 18.)

Pursuant to the Contract, Plaintiffs and HSBC were to be paid an equally divided total commission of two percent (2%) if Defendant's vessel the Superstar Virgo was chartered by Carnival Cruise Line Corporation ("CCL") or committed to a joint venture with CCL. Additionally, Plaintiffs and HSBC were to be paid an equally divided total commission of one percent (1%) if the Superstar Virgo was sold to CCL or any other Star vessel was

chartered or sold to CCL or committed to a joint venture with CCL.

On February 2, 2000, Defendant and CCL entered into a joint venture agreement (the "Joint Venture Agreement") to acquire Norwegian Cruise Lines, Inc. ("NCL") by acquiring shares of Norwegian's parent company NCL Holding ASA ("NCLH"). (Second Am.Compl. ¶ 28.) Pursuant to the Joint Venture Agreement, Carnival was given a forty percent (40%) interest in Arrasas Limited, a Star affiliate established to take control of NCLH. (Second Am.Compl. ¶ 29.) On March 21, 2002, just over one month after the Joint Venture Agreement was signed, Defendant and CCL executed a general release of their respective obligations under the Joint Venture Agreement. (Schalit Aff. ¶ 38.)

Plaintiffs claim responsibility for bringing Defendant and CCL together for the joint venture that they value at approximately one billion seven hundred million dollars ($1,700,000,000). They seek recovery of two-thirds of one percent of that amount ($11,333,333) based on three theories: breach of contract (Count I); quantum meruit (Count II); and unjust enrichment (Count III). (Second Am.Compl. ¶¶ 39, 44, and 50.) Defendant moves to dismiss this action on the following grounds: (a) lack of personal jurisdiction; (b) forum non conveniens; (c) failure to join an indispensable party; and (d) failure to state a claim upon which relief can be granted.

### III. Analysis

### A. Personal Jurisdiction

Defendant moves to dismiss this action based on lack of personal jurisdiction. To determine whether the Court has jurisdiction over the nonresident Defendant, the Court must undertake a two-part analysis. First, the Court must determine whether the Florida long-arm statute provides a basis for personal jurisdiction. *See Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d

623, 626 (11th Cir.1996). If so, then the Court must determine whether sufficient minimum contacts exist between the defendants and the forum state so as to satisfy "traditional notions of fair play and substantial justice" under the Due Process Clause of the Fourteenth Amendment. *Id.* (citations omitted).

### 1. Florida Long Arm Statute

■■■■ Florida's long arm statute restricts jurisdiction over non-residents to specifically enumerated instances. This Court is bound to interpret Florida's long-arm statute as the Florida Supreme Court would, and absent any guidance from the state's highest court, this Court is bound to adhere to decisions of Florida's intermediate courts. *See Sculptchair*, 94 F.3d at 627. Florida's long-arm statute is to be strictly construed and when a defendant raises a meritorious challenge to jurisdiction the burden shifts to plaintiff to prove personal jurisdiction. *Id.*

Plaintiffs claim Defendant Star is subject to the Court's jurisdiction under Fla. Stat. §§ 48.193(2), 48.193(1)(a), and 48.193(1)(g). The Court finds that Star is subject to the Court's jurisdiction pursuant to Fla.Stat. § 48.193(1)(a). Accordingly, only that section will be discussed. The relevant section states as follows:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

(a) Operating, conducting, engaging in, or carrying on a business or business

venture in this state or having an office or agency in this state.

Fla.Stat. § 48.193(1)(a).

 This case centers on the actions undertaken by the Plaintiffs (one of which is a Florida corporation) to bring together the Defendant and CCL (a corporation headquartered in Florida) for a business venture to acquire control of NCL (a Florida corporation). Though the presence of a subsidiary corporation within Florida is not enough to subject a nonresident parent corporation to the state's long arm jurisdiction, *see MeterLogic, Inc. v. Copier Solutions, Inc.*, 126 F.Supp.2d 1346, 1353–54 (S.D.Fla.,2000), the acquisition of the Florida subsidiary does subject the parent to the state's jurisdiction for any cause of action arising from that acquisition under Fla.Stat. § 48.193(1)(a).

### 2. Due Process

Having determined that the reach of the Florida long-arm statute extends to Star, the Court must determine whether that reach comports with due process. *See Sculptchair, Inc.*, 94 F.3d at 626. The Court must determine whether sufficient minimum contacts exist between Defendant and the forum state such that maintenance of the suit is reasonable, and does not violate "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

 This minimum contacts analysis involves three criteria. The defendant's contacts within the forum must: (1) be related to the plaintiff's cause of action or have given rise to it; (2) involve some purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws; and (3) be such that she should reasonably

anticipate being haled into court there. *See Sculptchair, Inc.*, 94 F.3d at 631.

 The Court finds that sufficient minimum contacts exist to justify haling Star into a Florida court. There can be no legitimate dispute that Star's dealings with Florida-based Colbert, pursuit of a relationship with Florida-based CCL, and acquisition of Florida-based NCL are intimately connected to Plaintiffs' claims.[1] It is equally apparent that Star purposefully availed itself of the privilege of conducting business in Florida through these activities. Finally, Star's business ventures in Florida encompass the kind of activity that would lead a person to reasonably expect the possibility of ensuing litigation in a Florida court should some dispute regarding these complex business ventures arise. Accordingly, applying Florida's long-arm statute to Star in this case is reasonable and comports with due process by not offending traditional notions of fair play and substantial justice.

### B. Forum Non Conveniens

 Defendant also moves to dismiss this action based on forum non conveniens. The forum non conveniens doctrine gives federal district courts inherent power to decline jurisdiction over a case in favor of a foreign forum. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 506–07, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). The touchstone of the doctrine is convenience. *See C.A. La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir.1983). The Court must "weigh the relative advantages and obstacles to fair trial" in each forum, considering factors of private and public interest. *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. 839.

---

1. The Court notes that Defendant has had additional contacts with Florida wholly separate from those connected to Plaintiffs' claims including advertising in this state.

To obtain a dismissal of an action on forum non conveniens grounds, the moving party carries the burden of persuasion to demonstrate that: "(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th. Cir.2001). A plaintiff's choice of forum is entitled to deference. Accordingly, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp.*, 330 U.S. at 508, 67 S.Ct. 839.

Defendant argues that the Court should dismiss this action for forum non conveniens because HSBC is based in London, England. HSBC's principal, however, appears to be the only witness in England. Defendant further argues as a basis of dismissal for forum non conveniens that the Contract is governed by English law. As set forth below, the Court is dismissing Plaintiffs' claim for breach of the Contract. This renders Defendant's choice of law argument moot. Even if English law were to apply to the remaining counts, that would not justify dismissal of this action. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 251, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (holding that choice of law analysis should not be preeminent in forum non conveniens balance). Accordingly, the Court finds that Defendant has not met its burden of showing that this case should be dismissed for forum non conveniens.

## C. Failure to Join Indispensable Parties

Defendant next moves to dismiss this action based on failure to join an indispensable party. Federal Rule of Civil Procedure 12(b)(7) provides that courts may dismiss suits where plaintiffs fail to join indispensable parties. To determine whether a court should dismiss an action for failure to join an indispensable party, courts must apply the criteria set forth in Federal Rule of Civil Procedure 19. *See Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.*, 669 F.2d 667, 669 (11th Cir.1982). The burden is on the moving parties to establish indispensability.

Rule 19(a) sets forth the criteria for courts to determine if joinder is required. The Rule reads:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if

(1) in the person's absence complete relief cannot be accorded among those already parties, or

(2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed.R.Civ.P. 19(a). In applying Rule 19(a)'s criteria to this matter, this Court must give controlling weight to the "pragmatic concerns, especially the effect on the parties and the litigation." *See Challenge Homes, Inc.*, 669 F.2d at 669 (citing *Smith v. State Farm Fire & Cas. Co.*, 633 F.2d 401, 405 (5th Cir.1980)).

Defendant argues that HSBC is an indispensable party to this action because it is a joint obligee under the Contract and because proceeding without HSBC will subject Defendant to the risk of multiple liability and duplicative litigation. As set forth below, the Court is dismissing Plaintiffs' claim for breach of the Contract.

This renders Defendant's joint-obligee argument moot. Moreover, Defendant has not indicated that it is involved in concurrent litigation with HSBC and there is no evidence before the Court suggesting a substantial likelihood that HSBC will bring such a suit. The Court will not dismiss this action based on the speculative possibility of such a lawsuit. *Cf. Coastal Modular Corp. v. Laminators, Inc.*, 635 F.2d 1102, 1108 (4th Cir.1980) (holding that joinder was not required where possibility that non-party would institute suit was unsupported by evidence). Accordingly, the Court finds that: (1) complete relief can be accorded among the parties to this action without joining HSBC to this lawsuit; (2) disposition of this action in the absence of HSBC will not as a practical matter impair or impede the parties interests; and (3) the parties will not be subjected to a substantial risk of multiple or inconsistent obligations. Therefore, the case will not be dismissed for failure to join HSBC.

### D. Failure to State a Claim

Finally, Defendant moves to dismiss this action based on failure to state a cause of action upon which relief may be granted. Defendant Federal Rule of Civil Procedure 12(b)(6) requires courts to dismiss complaints when plaintiffs fail to state a cause of action upon which relief may be granted. A motion to dismiss will be granted only where it is clear that no set of facts consistent with the allegations could provide a basis for relief. "It is well established that a complaint should not be dismissed for failure to state a claim pursuant to Fed.R.Civ.Pro. 12(b)(6) 'unless it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to relief.'" *Bradberry v. Pinellas County*, 789 F.2d 1513, 1515 (11th Cir.1986) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). For purposes of a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and accept as true all facts alleged by the plaintiff. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The issue is not whether the plaintiff will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Little v. City of North Miami*, 805 F.2d 962, 965 (11th Cir.1986) (citation omitted).

### 1. Breach of Contract

Defendant argues, and the Court agrees, that Plaintiffs' breach of contract claim (Count I) cannot be reconciled with the express terms of the Contract. "[I]f an attached document negates a pleader's cause of action, the plain language of the document will control...." *Franz Tractor Co. v. J.I. Case Co.*, 566 So.2d 524, 526 (Fla. 2d DCA 1990). The plain language of the Contract negates Plaintiffs' breach of contract claim that, therefore, must be dismissed. As detailed above, the Contract dealt with the sale, charter, or commitment to a joint venture of Star's *vessels* to CCL. It cannot reasonably be read to apply to Star's sale to CCL of an interest in its affiliated company Arrasas Limited—a sale made to facilitate the joint purchase of NCLH and acquire control of NCL.

### 2. Quantum Meruit and Unjust Enrichment

Defendant argues that Plaintiffs' allegations are insufficient to sustain the equitable claims for quantum meruit and unjust enrichment (Counts II and III). The Court finds that the Plaintiffs have sufficiently plead their equitable claims. To support Plaintiffs' quantum meruit claim, the Plaintiff's allegations must show that "services were performed under the circumstances in which the parties understood and intended that compensation

would be paid." *Daniel Levine and Co. Realtors v. Beach Enter., Ltd.,* 549 So.2d 1131, 1132 (Fla. 3d DCA 1989). To support Plaintiffs' unjust enrichment claim, Plaintiffs' allegations must show that: (1) Plaintiffs conferred a benefit on Defendant; (2) Defendant has knowledge of the benefit; (3) Defendant has accepted or retained the benefit; and (4) circumstances are such that it would be inequitable for Defendant to retain the benefit without paying fair value. *See Media Servs. Group, Inc. v. Bay Cities Communications, Inc.,* 237 F.3d 1326, 1330–31 (11th Cir.2001). Plaintiffs' allegations, taken as true, demonstrate that they are entitled to offer evidence to support their claims for quantum meruit and unjust enrichment. (*See, e.g.,* Second Am.Compl. ¶¶ 14–17, 20–23, 26, 28, 41–44, and 47–50.)

## IV. Conclusion

Accordingly, after a careful review of the record and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Defendant's Motion to Dismiss be, and the same is hereby, GRANTED in part and DENIED in part. Plaintiffs' breach of contract claim (Count I of the Second Amended Complaint) is DISMISSED. Defendant shall have until December 10, 2001, to answer the remaining counts of the Second Amended Complaint.