BFI WASTE SYSTEMS OF NORTH
AMERICA, INC., a Delaware
corporation Plaintiff,

v.

BROWARD COUNTY, FLORIDA,
Defendant.

No. 01–6655–CIV.

United States District Court,
S.D. Florida.

Sept. 24, 2002.

Stuart H. Sobel, Siegfried Rivera Lerner De La Torre & Sobel, Coral Gables, FL, for plaintiff.

James David Rowlee, Fort Lauderdale, FL, Michael Wayne Moskowitz, Moskowitz Mandell Salim & Simowitz, Fort Lauderdale, FL, for defendant.

## ORDER

GONZALEZ, District Judge.

**THIS MATTER** has come before the Court on Defendant Broward County's Motion to Dismiss (DE # 8) pursuant to Federal Rules of Civil Procedure 12(b)7 and 19. The Defendant, Broward County (the "County"), claims that the Plaintiff, BFI Waste Systems of North America, Inc. ("BFI"), has failed to join persons needed for a just adjudication of this action. The matter has been fully briefed by able counsel and is ripe for disposition. For the reasons stated herein, the County's Motion to Dismiss will be **DENIED**.

## I. BACKGROUND [1]

This case shares a common factual background with another case recently adjudicated by this Court and reported as, *Coastal Carting Ltd., Inc. v. Broward County, Florida*, 75 F.Supp.2d 1350 (S.D.Fla.1999). For the sake of clarity, the Court will recount the relevant parts of that common factual background along with the facts that directly gave rise to the instant case.

The relationships between and among the various agreements, ordinances, parties, and persons absent from this case, raised by the County's Motion to Dismiss, are complex. But, because the precise nature of these relationships is an essential element of the foundation upon which the Court's Order is based, the Court will attempt to elucidate them as succinctly as practicable.

With its landfills burgeoning in the late 1980s, the County, like many political subdivisions in states nationwide at that time, took steps to address the problems associated with the disposal of solid waste. The County, along with twenty-three (23) of the County's incorporated municipalities (the "Cities"), entered into "An Interlocal Agreement with Broward County for Solid Waste Disposal" (the "Interlocal Agreement"). *See* Compl. ¶ 9 and Compl. Ex. A. (a copy of the Interlocal Agreement).

The Interlocal Agreement, and the ordinances adopted, respectively, by the individual Cities and the County pursuant thereto, collectively established the Broward Solid Waste Disposal District (the "District"). *See* Interlocal Agreement ¶ 5.1; *Coastal Carting*, 75 F.Supp.2d at 1352. The District was therefore comprised of twenty-four (24) separate entities: the twenty-three (23) incorporated municipalities—i.e., the Cities; and the twenty-fourth entity, which was the County itself.[2] *See Coastal Carting*, 75 F.Supp.2d at 1352. Importantly for addressing the merits of the County's Motion to Dismiss, the County assumed its various obligations under the Interlocal Agreement in two distinct capacities: (1) the County assumed some of its obligations as the representative of the unincorporated areas of the County, and (2) the County assumed other obligations as the County itself, that is, the political subdivision in which the Cities are situated. *See* Interlocal Agreement ¶ 1.5 ("the COUNTY is entering this Agreement both representing unincorporated County, a waste generation area with solid waste requiring disposal, and COUNTY, as the party assuming the obligation under this Agreement for the disposal of solid waste for the [Cities] as well as for the unincorporated County").

The contractual rights and obligations created in the Interlocal Agreement are manifold. The Cities and the County agreed that

---

1. In addressing a motion to dismiss the Court takes the Plaintiff's well pleaded facts, even if in dispute, to be true. *See, e.g., S & Davis Int'l., Inc., v. Republic of Yemen*, 218 F.3d 1292, 1298 (11th Cir.2000); *In re Financial Federated Title & Trust Inc.*, 252 B.R. 840, 841 (Bankr.S.D.Fla. 2000) (addressing a Rule 19 motion).

2. The County, in the "Factual Background" section of its Motion to Dismiss, states that a twenty-fourth incorporated municipality subsequently elected to join the District, bringing the total number of entities comprising the District to twenty-five (25).

the County, either by itself or by engaging independent contractors, would construct and maintain a "resource recovery system," which would include two new solid waste disposal facilities. *See* Interlocal Agreement ¶¶ 1.3, 1.4, and 2.17. The County financed the construction of these state-of-the-art disposal facilities by issuing bonds. *See* Compl. ¶ 6. The Cities and the County also agreed that the Cities and the County, acting as representative of the unincorporated areas, would adopt "flow control ordinances" directing that solid waste generated in their respective geographic areas be delivered to the designated facilities of the resource recovery system. *See* Interlocal Agreement ¶ 3.2.[3]

To ensure that the County would be able to meet its financial obligations associated with the bond issuance, as well as its other obligations under the Interlocal Agreement, the Cities and the County—again, acting as representative of the unincorporated areas— also agreed, *inter alia*, that they would include in any contracts between them and solid waste haulers a provision requiring all solid waste hauled under such contracts to be delivered to designated disposal facilities within the resource recovery system. *See* Interlocal Agreement ¶ 3.3. To avoid ambiguity regarding whom such hauling contract provisions were intended to benefit, the Interlocal Agreement provides that "[t]he COUNTY will be a third party beneficiary" of such provisions. *See* Interlocal Agreement ¶ 3.3. In essence, therefore, the County itself is intended to be the "third party beneficiary" of the contracts it signs, as the representative of the unincorporated areas, with solid waste haulers.

The import of all of this is made clearer by Articles 5, 6 and 7 of the Interlocal Agreement, which relate, respectively, to the following: the creation of the Resource Recovery Board (the "RRB"); the setting and charging of "tipping fees"[4] and service charges; and the collection of tipping fees. *See* Interlocal Agreement Art. 5, 6 and 7. The RRB is the governing body and representative of the District—which, again, is comprised of the Cities and the County, and was established by the Interlocal Agreement and ratifying ordinances adopted by the Cities and the County. *See* Interlocal Agreement ¶¶ 2.16, 5.1. The RRB is a nine-member body comprised of persons appointed by the County Board of Commissioners, the Cities, and the President of the Broward County League of Cities. *See* Interlocal Agreement ¶ 5.2. The RRB is charged with, among other things, creating a "Plan of Operations," which is the corpus of rules and regulations under which the resource recovery system will be administered. *See* Interlocal Agreement ¶¶ 2.14, 4.7 and 5.1.

The RRB, as the governing body of the District, adopts and revises the tipping fees that solid waste haulers are charged for delivering solid waste to the disposal facilities of the resource recovery system. *See* Interlocal Agreement ¶ 6.1. While the RRB sets the amount of tipping fees haulers are to be charged, under the Interlocal Agreement it is the County, as the County itself, that bills haulers and collects the tipping fees. *See* Interlocal Agreement ¶ 7.1. The Interlocal Agreement further provides that the Cities and the County, as representative of the unincorporated areas, will include in any contracts with haulers provisions requiring the haulers to pay tipping fees to the County, and that "the COUNTY shall be a third party beneficiary of such provision." *See* Interlocal Agreement ¶ 7.5. Once again, the County itself is the "third party beneficiary" of contracts the County, acting as representative of the unincorporated areas, enters into with haulers.

---

**3.** The constitutionality, under the Commerce Clause of the United States Constitution, of the flow control ordinance passed by the County pursuant to the Interlocal Agreement—i.e., Broward, Fla., Ordinances 87–3 and 87–4 (March 10, 1987)—was the subject of *Coastal Carting;* this Court held that those ordinances unconstitutionally discriminated against interstate commerce. *See Coastal Carting,* 75 F.Supp.2d at 1357.

**4.** "Tipping fees", while perhaps sounding like improper gratuities to those unfamiliar with the nomenclature, are in fact simply fees, typically an amount per ton, that the owners or operators of solid waste disposal facilities charge solid waste haulers to "tip" their trucks at a disposal facility. *See* Interlocal Agreement ¶ 2.21.

The express purpose of the Interlocal Agreement can be summed up as follows. The County agreed to construct two state-of-the-art solid waste disposal facilities—and incur the indebtedness associated with that project, in the form of its bond issuance—in exchange for the pledge of the Cities, and the County as representative of the unincorporated areas, to guarantee the County a revenue stream of tipping fees by including provisions appropriate to this purpose in any contracts they sign with solid waste haulers.[5] Paragraph 1.4 of the Interlocal Agreement states:

> It is recognized by [the Cities] and COUNTY that the proposed resource recovery system to be constructed, operated, maintained and repaired by the COUNTY ... will be done in reliance upon the existence of the committed flow of solid waste from [the Cities] and unincorporated County and the revenue generating capabilities of [the District] created herein.

This arrangement met a stumbling block in *Coastal Carting* when this Court held that the flow control ordinance passed by the County pursuant to the Interlocal Agreement was unconstitutional. *See supra* at 511, n. 3. In the wake of this Court's *Coastal Carting* decision, the Cities and the County took several steps. First, on May 21, 1999, the Cities and the County amended the Interlocal Agreement. *See* Compl. ¶¶ 32–33 and Ex. E. In one of the "Whereas" clauses prefacing the amendment to the Interlocal Agreement, the text refers specifically to this Court's decision in *Coastal Carting* and the Supreme Court's decision in *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994) upon which this Court in part based its ruling in *Coastal Carting*, and then states as follows:

> [i]t is the intent of this amendment to require the parties to the Interlocal Agreement to conform the laws and rules governing [the District] to the case law regarding flow control and remove all barriers, restriction, impediments and regulations of whatever nature from any solid

waste generated in Broward County which is destined for disposal outside of the State of Florida.

Compl. Ex. E at 1. The amendment revised paragraph 3.3 of the Interlocal Agreement to provide the following:

> Each party agrees to include in any contract or contract amendments with haulers executed after the date of execution hereof, a provision that all solid waste shall be delivered to the resource recovery system transfer or disposal facility or facilities designated in the plan of operations and to enforce such provision, *with the exception of waste generated in Broward County which is shown to be destined for transportation to any destination outside of the State of Florida.*

Compl. Ex. E at 2 (emphasis added). The RRB adopted an analogous revision to the Plan of Operations on March 19, 1999. *See* Compl. Ex. F. at 1.

On July 13, 1999, the County amended Ordinance 87–4, one of those comprising its flow control ordinance found to be unconstitutional in *Coastal Carting*. *See* Compl. ¶¶ 29–31 and Ex. D. Analogously to the amendment to the Interlocal Agreement, one of the "Whereas" clauses prefacing the amendment to the County's flow control ordinance states:

> even though the County disputes the Court's findings, in an effort to avoid future litigation which challenges the validity of flow control ordinances adopted by the County and the [Cities], it is the intent of this amendment to conform the laws and rules governing [the District] to the case law regarding flow control and to remove all barriers, restrictions, impediments and regulations of whatever nature from any solid waste generated in Broward County which is destined for disposal outside of the State of Florida ....

Compl. Ex. D at 1–2. The amendment recites the original content of the ordinance, that is, "the County on behalf of the unincor-

---

5. The Interlocal Agreement also seeks to guarantee a revenue stream for the County by authorizing the RRB to impose of service charges on the Cities and the County as representative of the unincorporated areas to meet any shortfall in revenue generated from tipping fees. *See* Interlocal Agreement, Art. 6.

porated area of Broward County, Florida, hereby directs that all solid waste generated within the unincorporated area of the county be delivered to the resource recovery system transfer or disposal facility of facilities designated in the plan of operation under the Interlocal Agreement . . . ." *See* Compl. Ex. D at 2. The amendment then states:

Waste generated in Broward County which is shown to be destined for transportation to any destination outside of the State of Florida based upon a sworn affidavit of a hauler delivered to the County reciting facts which evidence the transportation and disposal of waste outside the State of Florida is excluded from the flow restrictions contained herein.

Compl. Ex. E at 3. The amendment also provides that the County "will confirm [sic] the terms and conditions of any agreement it may have with a hauler of solid waste to the terms and conditions of the Interlocal Agreement." Compl. Ex. E at 3.

BFI is a solid waste hauler that has four (4) parallel contracts (the "hauling contracts") with the County to provide solid waste hauling services to the County in four (4) unincorporated districts, respectively.[6] *See* Compl. ¶ 17. In keeping with the pre-*Coastal Carting* Interlocal Agreement, flow control ordinance adopted by the County, and Plan of Operations, the hauling contracts all provide that BFI "must deliver such solid waste to a Designated Disposal Facility or Facilities as directed by the Contract administrator . . . and pay any *COUNTY* fees or charges established for the use thereof." *See* Compl. Ex. B ¶ 3.4 (emphasis original).

After the *Coastal Carting* case and the consequent amendments to the Interlocal Agreement, the County's flow control ordinance, and the Plan of Operations, BFI desired to dispose of the solid waste it collected in the four unincorporated districts of the County at solid waste disposal facilities located outside the State of Florida. *See* Compl. ¶ 40. Such out-of-state facilities charge lesser tipping fees. *See* Compl. ¶ 40. On September 25, 2000, taking its cue from the County's amended flow control ordinance, BFI submitted affidavits to the County identifying the intended out-of-state destination for the solid waste. *See* Compl. ¶ 42 and Ex. H. On October 6, 2000, the County sent a letter to BFI stating that, the amendment to the County's flow control ordinance notwithstanding, BFI was contractually obligated under paragraph 3.4 of the hauling contracts to deliver all of the solid BFI collects in the unincorporated districts to the designated disposal facilities of the resource recovery system. *See* Compl. ¶ 43(a) and Ex. I.

BFI brought this action, naming only the County as a defendant, seeking damages from the County both for breach of contract and under 42 U.S.C. § 1983, and seeking equitable relief under 28 U.S.C. § 2201. Specifically, BFI seeks damages from County claiming that the County has breached the hauling contracts by refusing to allow BFI to dispose of solid waste collected from the unincorporated districts out of state, despite BFI's compliance with the County's amended flow control ordinance, thereby compelling BFI to pay higher tipping fees. *See* Compl. ¶¶ 77–83. BFI seeks damages under 42 U.S.C. § 1983 from the County claiming that the County's unconstitutional pre-*Coastal Carting* flow control ordinance and its post-*Coastal Carting* refusal to permit the out-of-state delivery violate(d) the Commerce Clause and damaged BFI. *See* Compl. ¶¶ 57–64. BFI also seeks declaratory and injunctive relief against the County: a declaration that the County effectively amended the hauling contracts by amending its flow control ordinance pursuant to the amendment to the Interlocal Agreement, and an injunction enjoining the County from taking any action to prevent BFI from delivering solid waste out of state. *See* Compl. ¶¶ 65–76. The County, in a pre-answer Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)7 and 19, argues that BFI's action must be dismissed for failure to join, as "necessary" parties, the District, the Cities, and Wheelabrator, Technologies, Inc. ("Wheelabrator"), a private entity the County states is the owner and oper-

---

**6.** BFI is in fact a successor and assignee, as of August 18, 1998, of Browning–Ferris Industries of Florida, Inc., which entered into the contracts with the County on or about November 5, 1996. *See* Compl. ¶ 17.

ator of the disposal facilities. *See* Motion to Dismiss at 2, 6.

## II. ANALYSIS

In the American adversarial judicial system, courts give plaintiffs great discretion in structuring an action, recognizing the interests of plaintiffs in their autonomy as litigants. *See* 4 James W. Moore, *Moore's Federal Practice,* § 19.02[1] (3d ed.2002). A plaintiff's discretion and autonomy in this regard are not, however, absolute. *Id.*

 Federal Rule of Civil Procedure 19, regarding "Joinder of Persons Needed for Just Adjudication," embodies one of the limits the judicial system places upon a plaintiff's exercise of discretion in structuring a lawsuit. Rule 19 delineates a two-step inquiry: (1) a court must first determine whether a person absent from the litigation ought to be joined "if feasible"; and (2) if a court determines that a person ought to be joined but joinder is not feasible—*e.g.,* because of limitations on service of process, subject matter jurisdiction or venue—the court must then determine whether "in equity and good conscience" the action may proceed in the person's absence, taking into consideration various factors. *See* Fed.R.Civ.P. 19 advisory committee's note; *Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.,* 669 F.2d 667, 669 (11th Cir.1982) (citing *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968)). Counsel, courts and commentators have widely adopted by convention the terminology labeling persons whom the court determines must be joined if feasible as "necessary", and those necessary persons whose joinder is not feasible and in whose absence the court determines an action cannot proceed as "indispensable". *See Challenge Homes,* 669 F.2d at 669, n. 3; 4 James W. Moore, *Moore's Federal Practice* § 19.02[2][c] (3d ed.2002). In making these determinations, of primary importance are the practical effects of the person's absence on the interests of the parties, the absent person, and the litigation. *See Challenge*

*Homes,* 669 F.2d at 669; *Ship Construction & Funding Services (USA), Inc., v. Star Cruises PLC,* 174 F.Supp.2d 1320, 1325 (S.D.Fla.2001) (citing *Challenge Homes*). The burden is on the moving party to establish that a person is necessary or indispensable. *See Star Cruises,* 174 F.Supp.2d at 1325.

The County, in its Motion to Dismiss, argues that the absent persons—i.e., the District, the Cities and Wheelabrator—are only "necessary" to this action.[7] *See* Motion to Dismiss at 6. Subsection (a) of Rule 19 guides the Court's determination of whether the absent persons are persons that must be joined if feasible, that is, whether they are "necessary." It provides in pertinent part as follows:

(a) Persons to be joined if feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party.

Fed.R.Civ.P. 19(a). For purposes of analysis, the three subparts of Rule 19(a) can be described as embodying three distinct but interrelated tests for determining when a person shall be joined if feasible. *See* 4 James W. Moore, *Moores Federal Practice* § 19.03[1]. First, an absent person shall be joined when complete relief cannot be granted among those already parties. Fed. R.Civ.P. 19(a)(1). This clause reflects the judicial system's interest in resolving dis-

---

7. The Court infers, without reaching the issues, that the County presumes that joinder of any of these absent persons would not pose problems

regarding service of process, subject matter jurisdiction, venue, etc.

putes efficiently and avoiding duplicative litigation. *See* Fed.R.Civ.P. 19, advisory committee's note. Second, an absent person shall be joined if the absent person claims an interest in the case, and a judgment may as a practical matter impair the absent person's ability to protect that interest. Fed.R.Civ.P. 19(a)(2)(i). This clause reflects the judicial system's interest in avoiding prejudice to the absent person. *See* Fed.R.Civ.P. 19, advisory committee's note. And third, an absent party shall be joined if the absent person claims an interest in the case, and a judgment may subject one of the parties in the case to a "substantial risk" of incurring multiple or otherwise inconsistent obligations as a result of the interest claimed by the absent person. Fed.R.Civ.P. 19(a)(2)(ii). This clause reflects the judicial system's interest in protecting the parties, usually the defendant, from the risk of inconsistent obligations that may arise due to future litigation. *See* Fed. R.Civ.P. 19, advisory committee's note. If any of these three tests are met, the absent person must be joined if feasible, *i.e.,* the absent person is "necessary." The Eleventh Circuit has described the inquiry under Fed. R.Civ.P. 19(a) as a determination of whether the absent parties are "materially interested in the litigation." *Tick v. Cohen,* 787 F.2d 1490, 1494 (11th Cir.1986).

## A. Rule 19(a)(1): The Court Can Accord Complete Relief Between BFI and the County.

With these principles in tow, the Court addresses the County's arguments that the Cities, the District and Wheelabrator are necessary to this case. The County first argues, in essence, that complete relief cannot be accorded between BFI and the County because BFI refers to the conduct of persons other than the County—*e.g.,* the RRB as governing body of the District, and Ms. Valerie Settles, general counsel to the RRB—in the allegations of its Complaint. *See* Motion to Dismiss at 3–4. The Court finds this argument unpersuasive for at least two reasons. The County argues that, "[i]n the Complaint ... BFI wrongfully attributes to the County conduct actually committed by the District" and that "[t]he actions of the

District, the Resource Recovery Board and its general counsel are independent of, and not within the control of, the County." *Id.* While it is true that allegations in the Complaint do refer to the conduct of persons other than the County—*see, e.g.,* Compl. ¶ 43—such allegations neither make those absent persons necessary to this case, nor prevent this Court from according complete relief between BFI and the County. BFI seeks damages from, and declaratory and injunctive relief against, the County; not the District, not the RRB and not Ms. Settles. An order granting complete relief to BFI in this case would compel the County to pay damages to BFI, declare the rights and obligations of BFI and the County under the hauling contracts to which only BFI and the County are parties, and enjoin the County from engaging in certain conduct; none of which requires the presence as parties in this case of the District, the Cities, the RRB or Ms. Settles.

In addition, it is axiomatic that for BFI to obtain the relief it seeks vis-à-vis the County, BFI will need to prove a set of facts alleged in its complaint that entitle it to the relief it seeks. If these absent persons are in fact independent of the County, as the County argues, the logical ramification would not be that the absent persons are necessary to this case, but that their conduct is irrelevant as to whether BFI is entitled to the relief it seeks from and against the County. BFI's allegations regarding the District, the RRB and Ms. Settles, which BFI argues are included in its Complaint merely as background,[8] may be superfluous to a determination of whether the County is liable to BFI, but such allegations do not necessitate the joinder in this case of those absent persons. And, even if the allegations are in fact relevant to BFI's claims for background or context or some other purpose, the fact that these persons may be needed for discovery or to testify at trial does not make them necessary parties in this case. *See, e.g., Johnson v. Smithsonian Inst.,* 189 F.3d 180, 188 (2d Cir.1999) (quoting *Costello Publ'g Co. v. Rotelle,* 670 F.2d 1035, 1044 (D.C.Cir.1981)) ("Rule 19 does not

---

8. *See* BFI's Corrected Response to County's Motion to Dismiss at 14.

list the need to obtain evidence from an entity or individual as a factor bearing upon whether or not a party is necessary or indispensable to a just adjudication"). *See also, Brown v. United States,* 42 Fed.Cl. 538, 564 (Fed.Cl.1998) (rejecting the defendant's argument that an absent person was necessary because the defendant would be forced to defend the actions of the absent person at trial).

### B. Rule 19(a)(2)(i): No Material Interests of the Absent Parties Will Be Prejudiced.

■ The County next argues, in essence, that the District, the Cities, and Wheelabrator must be joined in this action based upon Rule 19(a)(2), that is, because they have an interest in this case, and a judgment here in their absence may (1) prejudice their ability to protect their respective interests or (2) subject the County to a substantial risk of multiple inconsistent obligations. *See* Motion to Dismiss at 6–7. First, the County argues that the District and the Cities "will be affected by the outcome of this litigation, and their absence from this action will, as a practical matter, impair or impede their ability to protect their interest in the jointly developed, comprehensive waste disposal and resource recovery program developed in Broward County." Motion to Dismiss at 6. The Court disagrees with the County for several reasons. First, there is no evidence in the record that the District or the Cities do in fact claim an interest such as the County describes. To the contrary, the record indicates that the District, through the RRB's amendment to the Plan of Operations, and the Cities, by agreeing to the amendment to the Interlocal Agreement, have expressed their willingness to allow BFI and other solid waste haulers to do precisely what BFI complains the County is precluding it from doing—*i.e.,* deliver solid waste to out-of-state disposal facilities. Second, because the District and the Cities are not parties to this action, no judgment here will be legally binding upon them through the doctrines of collateral estoppel or res judicata. *Challenge Homes,* 669 F.2d at 669 (citing *Stovall v. Price Waterhouse,* 652 F.2d 537, 540 (5th Cir.1981)). And third, even if the District or

the Cities did in fact claim the interest the County argues they claim, their absence from this case will not, as a practical matter, impair their ability to protect it because the County would adequately represent such an interest. *See Washington v. Daley,* 173 F.3d 1158, 1166 (9th Cir.1999) (citing, *inter alia, Southwest Center for Biological Diversity v. Babbitt,* 150 F.3d 1152, 1153 (9th Cir.1998)); *see also, National Union Fire Ins. Co. of Pittsburgh, PA v. Rite Aid of South Carolina, Inc.,* 210 F.3d 246, 250–51 (4th Cir. 2000) (citing *Washington v. Daley*). The interest that the County imputes to the District and the Cities is essentially the same interest that the County claims for itself in this case, and the County has far greater incentive than do the District or the Cities to champion it. Thus, even if the District and the Cities did claim the interest that the County argues they claim, their absence from this case will not as a practical matter impair or impede their ability to protect it.

The County also argues that Wheelabrator "has a material interest in this action, since the County has a contractual obligation to deliver all processable waste to the resource recovery facilities owned and operated by Wheelabrator." *See* Motion to Dismiss at 7–8. The Court finds the County's argument flawed for at least two reasons. First, the County directs the Court to paragraph 3.2 of Interlocal Agreement and to pages viii and xi of the Plan of Operations as the only sources of this contractual obligation. *Id.* Wheelabrator is not a party to either of those agreements. And, as noted *supra* at 5 & 7, the County itself, not Wheelabrator or any other owner or operator of the disposal facilities, is the intended beneficiary of the contract provisions requiring delivery of all solid waste to the disposal facilities of the resource recovery system and the payment of tipping fees. Therefore, it appears to the Court that Wheelabrator is neither a party to, nor a third party beneficiary of, the Interlocal Agreement or the Plan of Operations. The Court cannot see how these agreements, which create no contractual rights in Wheelabrator, could be the source of a material interest for Wheelabrator in this case. *See, e.g., Northrop Corp. v. McDonnell Douglas Corp.,* 705 F.2d 1030, 1043 (9th Cir.1983)

("Subparts (i) and (ii) [of Rule 19(a)(2)] are contingent ... upon an initial requirement that the absent party claim a legally protected interest relating to the subject matter.") Second, and moreover, given the amendments to both the Interlocal Agreement and the Plan of Operations, which both expressly exempt solid waste designated for out-of-state delivery from the general strictures of those agreements, the Court cannot see how the County can continue to characterize itself as contractually obligated under the Interlocal Agreement or the Plan of Operations to cause *all* solid waste collected in the unincorporated areas to be delivered to the resource recovery system. If Wheelabrator has a material interest in having all solid waste generated in the unincorporated areas delivered to the disposal facilities it owns and operates, such an interest is not to be found where the County has directed the Court to find it. And finally, as with the District and the Cities, Wheelabrator's interest in this case, if any, will be more than adequately represented by the County.

### C. Rule 19(a)(2)(ii): The County Will Not Be Subject to a Substantial Risk of Multiple, Inconsistent Obligations.

■ The County also argues that if the District and the Cities are not joined as parties to this litigation, "the County could find itself in conflict between a judgment of this Court and a requirement imposed by the Plan of Operations enacted by the District or an amendment to the [Interlocal Agreement] adopted by the cities representing a majority of the population of the District." Motion to Dismiss at 7. The text of Rule 19(a)(2)(ii) makes clear that it is intended to protect those parties present in the case from a "substantial risk" of multiple, inconsistent obligations. *See, e.g., Sindia Expedition, Inc. v. Wrecked & Abandoned Vessel,* 895 F.2d 116, 122 (3d Cir.1990) ("The subdivision was enacted to protect parties from a 'substantial risk' of multiple or inconsistent obligations, not a possible risk.") The hypothetical scenario described by the County does not constitute such a "substantial risk." As noted *supra,* the District and the Cities, by amending the Interlocal Agreement and the Plan of Operations, have all expressed their willingness in the wake of *Coastal Carting* to permit solid waste to be delivered out of state. The possibility that three years after adopting such amendments they will reverse themselves, in the face of the Supreme Court's ruling in *C & A Carbone* and this Court's ruling *Coastal Carting,* and put the County in a legal dilemma such as the County describes seems exceedingly remote.

### D. This Case Is Distinguishable from *Coastal Carting.*

The County also argues that BFI's Complaint ought to be dismissed because this Court, based on Rule 19, dismissed Coastal Carting's initial complaint in the *Coastal Carting* case, which also named only the County as a defendant, and, the County contends, the issues raised by BFI's complaint are essentially the same. *See* Motion to Dismiss at 7. The Court disagrees. While, as noted *supra,* this case and *Coastal Carting* do share a common factual background, the issues raised by BFI's Complaint are significantly different from those raised by Coastal Carting's complaint. Coastal Carting challenged the constitutionality under the Commerce Clause of the County's flow control ordinance adopted pursuant to the Interlocal Agreement among the County and the Cities. *See Coastal Carting,* 75 F.Supp.2d at 1352–53. BFI alleges that, in light of this Court's decision in *Coastal Carting* and the consequent amendments to the Interlocal Agreement and the County's flow control ordinance, the County alone has breached its agreement with BFI and acted in a manner violative of the Commerce Clause. The Cities were necessary in *Coastal Carting* for the Court to accord complete relief in that case, they are not necessary here. In fact, in light of the record before it, and given the nature of BFI's claims and the relief sought by BFI, the Court is hard pressed to envision a claim BFI could plead against the District, the Cities, the RRB—or Wheelabrator, for that matter—that would survive a motion for summary judgment.

### III. CONCLUSION

Accordingly, having reviewed the Defendant's Motion to Dismiss and the record, and being otherwise duly advised, it is hereby:

**ORDERED AND ADJUDGED** that the Defendant Broward County's Motion to Dismiss (DE # 8), filed May 14, 2001 is **DENIED.**