53 So.2d 304 (1951)
CARNASION et al.
v.
PAUL et al.
Supreme Court of Florida, Division B.
June 19, 1951.
*305 John S. Byington, Daytona Beach, I. Walter Hawkins, Holly Hill, William S. Turnbull, Daytona Beach and Law Office Claude Pepper, Tallahassee, for appellants.
Raymond & Wilson, Charles W. Luther, Daytona Beach, James H. Sweeny, Jr., De Land, Richard W. Ervin, Atty. Gen., and Fred M. Burns, Asst. Atty. Gen., for appellees.
ADAMS, Justice.
Appellee filed a bill in equity questioning the authority of Volusia County to levy and collect a tax upon a steel and concrete pier erected pursuant to a permit from the War Department of the United States. The pier is located on the ocean side of Volusia County below the low water mark of the Atlantic Ocean. The lower court dismissed the bill thereby holding the property subject to taxation by Volusia County.
On appeal from that ruling we have the single question of whether Volusia County, a political subdivision of this state, had lawful power to impose this tax.
Appellant's case is bottomed upon the case of United States v. State of California, 332 U.S. 19, 67 S.Ct. 1658, 91 L.Ed. 1889, and their position is plainly stated in the brief: "The California case shifts the ownership and dominion of the tidelands seaward from the low water mark to the Federal government, thereby giving the United States exclusive and despotic dominion in, over and upon the tidelands, and such tidelands are no longer in the territorial area of the respective States and consequently beyond the taxing jurisdiction of the States."
We, therefore, shall deal with the unprecedented question upon the broad basis of this claim. The boundaries of Florida are fixed by the Constitution of 1885, Article I, Section 1, F.S.A.: "The boundaries of the State of Florida shall be as follows: Commencing at the mouth of the river Perdido; from thence up the middle of said river to where it intersects the south boundary line of the State of Alabama, and the thirty-first degree of north latitude; thence due east to the Chattahoochee river; thence down the middle of said river to its confluence with the Flint river; thence straight to the head of the St. Mary's river; thence down the middle of said river to the Atlantic ocean; thence southeastwardly along the coast to the edge of the Gulf Stream; thence southwestwardly along the edge of the Gulf Stream and Florida Reefs to and including the Tortugas Islands; thence northeastwardly to a point three leagues from the mainland; thence northwestwardly three leagues from the land, to a point west of the mouth of the Perdido river; thence to the place of the beginning."
We get an entirely different interpretation of the California case from that urged by appellants. There have been innumerable comments about what the California case held. See Wyoming Law Review, Vol. 3, page 10; University of Florida Law Review, Vol. 1, page 44; Washington and Lee Law Review, Vol. 5, page 85. Appellants construe the case to roll back the state boundaries to the low water mark for all purposes. In other words, they say the tidelands are vested exclusively in the United States government for all purposes. We do not understand this to be the full import of the case. We understand that only *306 the oil deposits underneath the tidelands were involved. In no respect did the opinion hold the exclusive title and right of possession in the fee to be in the United States. The paramount right of possession is in the United States with concurrent right of possession in the sovereign state to be exercised not in conflict with the United States.
Volusia County, therefore, has the right to exercise police control over the area and may tax the same in return so long as no paramount authority is attempted to be exercised against the sovereign authority of the United States. See Skiriotes v. State of Florida, 313 U.S. 69, 61 S.Ct. 924, 85 L.Ed. 1193; Toomer v. Witsell, 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460. The United States is not a party to this suit and is not questioning the right of Volusia County to exercise its taxing power.
Appellant attaches considerable significance to the fact that the War Department granted the permit to erect this pier. Its only significance is that such a permit is required in all instances where structures are made in or upon navigable water.
Finding no error in the decree it is 
Affirmed.
SEBRING, C.J., and CHAPMAN and ROBERTS, JJ., concur.