686 So.2d 711 (1996)
FLORIDA MARINE TOWING, INC., Appellant,
v.
UNITED NATIONAL INSURANCE COMPANY, Appellee.
No. 96-393.
District Court of Appeal of Florida, Third District.
January 2, 1997.
Rehearing Denied February 5, 1997.
Keller & Houck, Miami, and Jerry D. Hamilton, Palm Beach, and John W. Keller, Miami, for appellant.
Badik, Will & Kallen and John D. Kallen, North Miami, for appellee.
*712 Before SCHWARTZ, C.J., and COPE and FLETCHER, JJ.
COPE, Judge.
Plaintiff-appellant Florida Marine Towing, Inc. appeals a summary final judgment denying coverage under a marine hull insurance policy. We agree with the trial court that there was breach of the insurance policy's navigational warranty. However, because appellant Florida Marine Towing is a lender which was an additional assured under the policy, the breach of navigational warranty by the operators of the tug does not defeat insurance coverage. The summary judgment in favor of the appellee insurer must be reversed.

I.
Plaintiff-appellant Florida Marine Towing, Inc. ("Lender") sold a tugboat to Rueckert Marine, Inc. ("Owner") in 1991. Rueckert made a down payment and was to pay off the remaining balance in installments over a two-year period. After the sale, Florida Marine had the status of a lender, and was added as a loss payee and additional assured on the marine hull insurance policy issued by defendant-appellee United National Insurance Company ("Insurer").
The insurance policy contained a navigational warranty which warranted that the vessel would be "confined to the use and navigation of the following waters: Warranted confined to the Inland waters of the state of Florida." The tugboat sank while in the Atlantic Ocean approximately one-half mile offshore of Boca Raton, Florida. The record does not reveal why the vessel was at that location.
The Lender's claim under the insurance policy was denied on the ground that the vessel was not in the "inland waters" of Florida at the time of the sinking, and consequently the navigational warranty had been violated. The Lender brought suit against the insurer, contending that "inland waters" includes anything within Florida's territorial waters. Since the sinking occurred inside Florida's three-mile limit, the Lender contended that there had been no breach of the navigational warranty. Alternatively, the Lender contended that it had no control over the vessel, and that if the navigational warranty had been breached, the breach could not be attributed to the Lender.
The trial court entered summary judgment in favor of the insurer, and the Lender has appealed.

II.
The threshold question is whether interpretation of the navigation warranty is governed by Florida or federal law. Professor Schoenbaum has summarized the governing law as follows:
The law of marine insurance has never been codified in the United States. However, the basic substantive law of marine insurance is federal maritime law, and the Supreme Court has stated that United States courts should look to English law for the applicable rules because of the "special reasons for keeping in harmony with the marine insurance laws of England, the great field of this business." However, in Wilburn Boat Co. v. Fireman's Fund Ins. Co., [348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955),] the Supreme Court ruled that in the absence of a controlling federal admiralty law principle to guide the resolution of a particular issue, the courts must apply the applicable state law rule.

2 Thomas J. Schoenbaum, Admiralty and Maritime Law § 19-2, at 407-08 (2d ed. 1994) (footnotes omitted; emphasis added).
In Wilburn Boat the Court held that there was no federal admiralty law principle applicable to the breaches of warranty there at issue, and ruled that state law would apply. The Wilburn Boat breaches of warranty involved transfer of ownership of the vessel without permission and commercial use of the vessel despite a private pleasure use warranty.[1] The Wilburn Boat decision did *713 not involve a breach of navigational warranty.
The inquiry, then, is whether there is a controlling federal admiralty law principle which governs the interpretation of navigational warranties in marine insurance policies. Under the decided cases, the answer is yes.
As stated by the Fourth District Court of Appeal in Aetna Insurance Co. v. Dudney, 595 So.2d 238 (Fla. 4th DCA 1992), "Federal courts have recognized that ... strict construction of navigational limit warranties has been an established admiralty rule of the federal judiciary." Id. at 239 (citing Lexington v. Cooke's Seafood, 835 F.2d 1364 (11th Cir.1988); Port Lynch, Inc. v. New England Int'l Assurety of America, Inc., 754 F.Supp. 816 (W.D.Wash.1991)); see also Home Ins. Co. v. Vernon Holdings, 1995 A.M.C. 369, 372-74 (S.D.Fla.1994). The practical significance is that as a general rule, breach of a "navigational warranty releases the insurance company from liability even if compliance with the warranty would not have avoided the loss." Aetna Insurance Co. v. Dudney, 595 So.2d at 239 (emphasis omitted; internal quotation marks omitted).
It follows that in interpreting the term "inland waters," the beginning point for analysis is federal law. In a series of decisions, the United States Supreme Court has adopted a definition of "inland waters" for purposes of describing the geographic territory and jurisdiction of the states. Those definitions have a generally understood meaning for purposes of maritime law. See 1 Thomas J. Schoenbaum, supra, §§ 2-4, 2-13, 2-14. This line of Supreme Court decisions developed because Congress enacted the Submerged Lands Act, but intentionally left to the Supreme Court the responsibility to define what constitutes "inland waters." United States v. California, 381 U.S. 139, 164, 85 S.Ct. 1401, 1415, 14 L.Ed.2d 296, 312 (1965).
In its decisions, the Supreme Court uses the term "inland waters" and "internal waters" interchangeably. See United States v. Louisiana, 394 U.S. 11, 22, 89 S.Ct. 773, 780, 22 L.Ed.2d 44, 61-62 (1969).
The Supreme Court has described "inland waters" as follows:

Waters landward of the coastline ... are internal waters of the State, while waters up to three miles seaward of the coastline are also within a State's boundary as part of the 3-mile ring referred to as the marginal sea. This Court previously has observed that Congress by the Submerged Lands Act left to the Court the task of defining the boundaries of the States' internal waters, and the Court under that Act has adopted the definitions contained in the Convention [on the Territorial Sea and the Contiguous Zone] in determining the line marking the seaward limit of inland waters of the States.

United States v. Maine, 469 U.S. 504, 513, 105 S.Ct. 992, 998, 83 L.Ed.2d 998, 1006 (1985) (emphasis added; footnotes and citations omitted).[2]
*714 Since the Supreme Court has authoritatively defined the term "inland waters" where it is used for purposes of a geographic description, and since that meaning is now generally understood for maritime law purposes, it follows that the generally accepted definition should be applied where the term "inland waters" of a state is used in a navigational warranty.
Insofar as pertinent in this case, the "inland waters" of Florida means Florida's waters on the landward side of the coastline. Rivers, harbors, and canals would be examples of "inland waters."[3]
The tugboat in this case sank while in the Atlantic Ocean offshore of the beach near Boca Raton. The water seaward of the coastline and out to the three-mile limit is the marginal or territorial sea of Florida. The marginal or territorial sea is not "inland waters." Since the tug was in the marginal sea when it sank, there was a breach of the navigational warranty.
The Lender relies on part of a definition of "inland waters" contained in René de Kerchove, International Maritime Dictionary 393 (2d ed. 1961) which states:
As used in marine insurance this term denotes canals, lakes, streams, rivers, watercourses, inlets, bays and arms of the sea between projections of land. When no specific line is prescribed, the dividing line at all buoyed entrances from seaward to bays, sounds, rivers or other estuaries is a line approximately parallel with the general trend of the shore, drawn through the outermost buoy or other navigational aid of any system of buoyage. The inland waters of a state are those inside its marginal sea as well as the waters within its land territory.
The Lender relies on the last sentence of the definition, but the discussion of marine insurance is found in the first sentence and is consistent with the result we reach. More important, the Supreme Court's definition of "inland waters" was announced in 1965 in United States v. California, 381 U.S. at 161-67, 85 S.Ct. at 1414-17, which was several years after the dictionary's publication date. The dictionary should conform to the Supreme Court definition and not the other way around.
The Lender relies on Eagle Star Insurance Company v. Ross, 247 So.2d 514 (Fla. 3d DCA 1971), but that reliance is misplaced. In Eagle Star the navigational warranty covered the "inland and coastal waters of the State of Florida." Id. at 515. The vessel sank twenty miles offshore. The insurer denied coverage, contending that "coastal waters" meant waters within Florida's three-mile limit. This court found "coastal" to be ambiguous on the point, and noted that if the insurer had wished to limit navigation to the state boundaries, it could have specifically so stated. Id. at 515. There is no inconsistency between Eagle Star and this case, where the issue is the definition of "inland waters."

III.
The Lender argues alternatively that the breach of the navigational warranty does not affect the Lender's coverage because the Lender is an additional assured on the insurance policy. The Lender is correct.
As explained by one commentator:
What is the extent of a mortgagee's interest under the policy if the loss is a direct result of an act or omission on the part of the mortgagor-insured which voids the policy? The answer lies in whether the mortgagee's rights are derivative in nature; ... or arise independently from direct placement of coverage in the mortgagee's own right.
I Alex L. Parks, The Law and Practice of Marine Insurance and Average 199 (1987). If a mortgagee is simply a loss payee on the insurance policy, then the mortgagee's right of recovery would be no greater than the right of the mortgagor. Id. Where, however, the mortgagee is an additional assured, *715 then the mortgagee's coverage is not adversely affected by the wrongful act of the mortgagor. See id. at 199-200.
"Where two parties are insured under the same policy for their separate interests, the willful misconduct of one will not prejudice the claim of the other in respect of his interest." Donald O'May & Julian Hill, Marine Insurance 114 (1993). In a case involving an innocent mortgagee, where "the interest of the owner and mortgagee were separately insured, albeit under the same policy ... the misdeeds of the owner in procuring the scuttling were not visited upon the mortgagee so as to invalidate the latter's separate interest and claim under the policy." Id. (citation omitted).[4]
It follows that the insurer was not entitled to summary judgment. For the stated reasons, the summary judgment is reversed and the cause remanded for further proceedings.
Affirmed in part, reversed in part, and remanded for further proceedings consistent herewith.
NOTES
[1] In Wilburn Boat, the insurer had denied coverage after a fire destroyed a houseboat because of an alleged breach of a warranty that the boat could not be sold without the consent of the insurer, and that the boat must be used solely for private pleasure purposes. The owners had transferred title to the vessel to a corporation they controlled, and the vessel was used for commercial purposes. Finding that there was no governing principle of admiralty law, the Supreme Court held that state law would apply to the interpretation of the breach of warranty there at issue, and in particular the question whether the breach of warranty would result in a loss of coverage absent a showing that the breach actually contributed to bring about the loss insured against. 348 U.S. at 320, 75 S.Ct. at 373-74.
[2] As elaborated in United States v. Louisiana:

Under generally accepted principles of international law, the navigable sea is divided into three zones, distinguished by the nature of the control which the contiguous nation can exercise over them. Nearest to the nation's shores are its inland, or internal waters. These are subject to the complete sovereignty of the nation, as much as if they were a part of its land territory, and the coastal nation has the privilege even to exclude foreign vessels altogether. Beyond the inland waters, and measured from their seaward edge, is a belt known as the marginal, or territorial sea. Within it the coastal nation may exercise extensive control but cannot deny the right of innocent passage to foreign nations. Outside the territorial sea are the high seas, which are international waters not subject to the dominion of any single nation.
United States v. Louisiana, 394 U.S. at 22-23, 89 S.Ct. at 780-81 (emphasis added; footnotes omitted).
[3] Technical rules have been established for setting the location of the coastal baseline where the coast has deep indentations, or a fringe of coastal islands, or large bays. See 1 Thomas J. Schoenbaum, supra, §§ 2-4 through 2-12. In the case of certain bays, for example, the baseline is run across the mouth of the bay and the waters within the bay would be "inland waters." See id. § 2-7. No such coastline feature is involved in this case.
[4] Although presenting a distinct issue, an innocent owner has been allowed to recover where the violation of the navigational warranty was perpetrated by the intentional misconduct of the ship's master. See United States Fire Ins. Co. v. Cavanaugh, 732 F.2d 832, 834-35 (11th Cir.), cert. denied, 469 U.S. 1036, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984); John T. Wooldridge, Barratry by Exceeding the Warranted Navigational Limit of the Insurance Policy, 24 J. Mar. L. & Com. 357 (1993).