Richard LAUX and Martha
Laux, Plaintiffs,

v.

CARNIVAL CORPORATION, a foreign
corporation d/b/a Carnival Cruise
Lines, and Dianne Nichol, Defendants.

No. 05 22278 CIV KING.

United States District Court,
S.D. Florida,
Miami Division.

Jan. 17, 2007.

Andrew L. Waks, Waks & Barnett, Miami, FL, Patrice Ann Talisman, Hersch & Talisman, Coconut Grove, FL, Counsel for Plaintiff.

Donnise Annette DeSouza, Carnival Cruise Line, Miami, FL, Christopher Edson Knight, Michael J. Drahos, Fowler White Burnett, Miami, FL, Counsel for Defendant.

### ORDER OF REFERENCE

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court upon Defendant Dr. Nichol's Motion to Dismiss for Lack of Personal Jurisdiction (DE # 15), filed November 21, 2005. Both parties argued this Motion before the Court on December 15, 2005 (DE # 24). After additional discovery, Plaintiffs filed their Response on December 4, 2006 (DE # 56). On December 14, 2006 Defendant Replied (DE # 58).

## I. BACKGROUND

On June 19, 2004, at the port of Miami, Plaintiffs Richard Laux and Martha Laux boarded Defendant Carnival Cruise Lines' cruise ship, *Triumph*, as passengers on a one week cruise. (Second Am. Compl. ¶ 6.) Defendant Dr. Nichol, an Australian citizen licensed to practice medicine in Australia, was employed by Carnival Cruise Lines as the doctor on that ship. (Aff. of Dianne Nichol ¶ 5, 7.) On or about the evening of June 23, 2004 and the early morning of June 24, 2004, while the *Triumph* was outside Florida's territorial boundaries, Plaintiff Richard Laux went to the infirmary for a severe headache, loss of consciousness, involuntary passing of urine, facial ticks and expressions, vomiting, and subsequent combative behavior. *Id.* at ¶ 8. Defendant Dr. Nichol examined Plaintiff and diagnosed the episode as a side effect from taking Viagra. *Id.* at ¶ 10. Defendant kept the Plaintiff on board the vessel and Plaintiffs claim she advised Richard to wait and see his treating physician when he got home. *Id.*

On June 26, 2004 at 2:00 a.m. the *Triumph* docked at the port of Miami. (Resp. to Mot. to Dismiss p. 2.) At approximately 8:00 a.m. that morning, Plaintiffs allege they went to the ship's infirmary and asked Defendant Nichol if they should take Richard to a local hospital for examination or treatment. (Aff. of Martha Laux ¶ 6, 8.) Defendant Nichol allegedly told Plaintiffs it was not necessary to take Richard to a local hospital, handed Martha Laux a letter for Richard's treating physicians and told Plaintiffs to wait and visit a doctor when they got home. *Id.* at ¶ 7. Plaintiffs assert the Defendant also refused to allow Richard to remain in the infirmary until it was time to disembark and did not re-examine him. *Id.* at ¶ 8.

Back in Philadelphia, Plaintiff Richard Laux's treating physicians determined he had suffered from a brain bleed which allegedly should have had immediate medical attention. (Resp. to Mot. to Dismiss p. 3.) As a result of Defendant's failure to properly diagnose his condition and provide immediate and competent treatment, Plaintiffs allege personal injury; pain and suffering; disability; mental anguish; loss of capacity for the enjoyment of life; medical expenses in the past, present, and future; loss of earnings; loss of earning capacity; aggravation of any pre-existing physical condition; and all other damages allowable by law. (Second Am. Compl. ¶ 24.)

On August 17, 2005, Plaintiffs filed a Complaint (DE # 1) against Carnival Corporation d/b/a Carnival Cruise Line and

Dr. Dianne Nichol for damages based on the negligent diagnosis and treatment of Plaintiff Richard Laux. In the instant Motion, Defendant Nichol moves to dismiss the above-styled action for lack of personal jurisdiction.

Specifically, Defendant is a citizen of Australia, her place of residence is in Australia, and she is a medical doctor licensed to practice medicine in Australia. (Aff. of Dianne Nichol ¶ 5.) She is not now and has never been a resident of Florida, maintains no offices or bank accounts in Florida, does not own property in Florida, holds no professional licenses in Florida, has not conducted business in Florida, is not engaged in any activities within the State of Florida, and has never filed a lawsuit in a Florida Court. *Id.* at ¶ 6. Defendant argues that Florida's long arm statute is inapplicable because Defendant did not commit any tortious act in this state; rather, Defendant committed all the allegedly injurious acts in open sea.

In their Response, Plaintiffs argue this Court possesses personal jurisdiction over Defendant because Defendant consented to the jurisdiction of this Court when she signed the forum selection clause in her contract with Carnival Cruise Lines, committed a tortious act in Florida, carried on a business or business venture in Florida, engaged in service activities in Florida and engaged in substantial and not isolated activities in Florida.

In Defendant's Reply, she reiterates her lack of sufficient contacts with the state of Florida to satisfy Florida's long arm statute and the Fourteenth Amendment's due process requirement. Defendant further argues that if personal jurisdiction is found based upon Martha Laux's affidavit, Dr. Nichol is entitled to a limited evidentiary hearing because her affidavit is in direct conflict with Martha Laux's affidavit.

## II. *LEGAL STANDARD*

In order to determine whether personal jurisdiction exists over an out-of-state defendant, a court must conduct a two-pronged analysis. *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 626 (11th Cir.1996). First, the court must assess whether there is jurisdiction under the state's long-arm statute. *Id.* Second, the court must decide whether the defendant has established sufficient minimum contacts with the state, such that the exercise of jurisdiction will satisfy the Fourteenth Amendment's due process requirement by comporting with "traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). In the context of this two-pronged analysis, the plaintiff must plead facts that establish the basis for jurisdiction. *Future Tech. Today, Inc. v. OSF Healthcare Sys.,* 218 F.3d 1247, 1249 (11th Cir.2000). If the plaintiff does so, the burden shifts to the defendant to challenge plaintiff's facts through affidavits or other evidence. *Id.* If the defendant meets this burden, the burden reverts to the plaintiff to substantiate the allegations in the complaint with affidavits or other evidence. *Id.*

### A. *Florida's Long–Arm Statute*

Florida's long-arm statute—Fla. Stat. § 48.193—provides for personal jurisdiction over a non-resident Defendant under two sets of circumstances. The first, contained in Fla. Stat. § 48.193(1), provides for specific personal jurisdiction when a claim arises from the defendant's forum-related contacts. Actions that give rise to specific jurisdiction include carrying on a business in Florida, which confers jurisdiction pursuant to § 48.193(1)(a), and committing a tortious act in Florida, which confers jurisdiction pursuant to § 48.193(1)(b). The second basis for jurisdiction, § 48.193(2), provides for general

personal jurisdiction when the defendant's forum-related contacts are sufficiently extensive, even though the case did not arise out of those contacts.

### B. *Minimum Contacts*

■ Courts must examine three factors to determine whether a defendant has established sufficient minimum contacts with the forum state to comport with the Fourteenth Amendment's due process requirement: (1) whether the defendant has purposefully availed itself of the benefits of doing business in the forum state; (2) whether the cause of action arose out of the activities through which the defendant did so; and (3) whether the defendant could have reasonably anticipated being haled into court in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Future Tech.*, 218 F.3d at 1250.

### III. *DISCUSSION*

■ Whether personal jurisdiction exists over a foreign physician practicing medicine on a cruise ship is a highly debated topic in the United States. Florida case law, however, is clear: Florida Courts only have personal jurisdiction over a ship's doctor if the alleged malpractice occurred inside Florida's territorial boundaries. *See, e.g., Elmlund v. Mottershead*, 750 So.2d 736 (Fla. 3d DCA 2000); *Rana v. Flynn*, 823 So.2d 302 (Fla. 3d DCA 2002); *Benson v. Norwegian Cruise Line Ltd.*, 859 So.2d 1213 (Fla. 3d DCA 2003).

In *Elmlund*, the Third District Court of Appeals upheld a trial court's determination that it had no personal jurisdiction over a United Kingdom licensed physician, working on a Carnival Cruise Ship, operating out of Miami, because the alleged malpractice took place on open sea. 750 So.2d 736. Following the *Elmlund* Court's decision, the *Benson* Court explained, "[b]ecause the alleged incident of malpractice occurred outside of Florida's territorial waters, the *Elmlund* court concluded that the doctor could not be deemed to have been doing business in Florida." 859 So.2d 1213. Thus, this Court has personal jurisdiction over a doctor on a cruise ship only if the alleged malpractice occurred inside Florida's territorial boundaries.

■ In the instant case, Martha Laux and Dr. Nichol disagree as to whether the alleged malpractice occurred inside Florida's territorial waters or only out at sea. In her affidavit, Plaintiff Martha Laux asserts that she visited the ship's infirmary on June 26, 2004 while the ship was docked in Miami. She explains, "the doctor was in the infirmary at the time and I asked her, as I had on previous occasions, as to whether we should take Richard to a local hospital for examination or treatment. I told the doctor that although he had stopped vomiting, I did not think he was doing very well. Dr. Nichol told me, as she had said before, that it was not at all necessary to take Richard to a hospital and that we should go instead to our regular PCP doctors when we got home. Dr. Nichol took me into her office and handed me a letter to give to Richard's treating physicians when we got back to Pittsburgh. I asked if Richard could stay in the infirmary in one of the cots until it was time for us to get off the ship because I felt it would be safer to have him close to medical attention. I was told that we could not stay in the infirmary and that we should take him back to our cabin. Dr. Nichol did not examine Richard while we were in the infirmary that day." (Aff. of Martha Laux ¶ 6, 7, and 8.) On the other hand, Dr. Nichol claims in her affidavit that she "did not see, evaluate or treat Mr. Laux in any manner while the ship was in port on Saturday, June 26th." (Aff. of Dianne Nichol ¶ 8.) Dr. Nichol claims her only involvement in the care and treatment of Richard Laux occurred "while the ship was at sea." *Id.*

These affidavits are in direct conflict on the key jurisdictional issue: whether or not the alleged tortious medical service or advice was given when the parties were physically present in Miami or while at sea. In a Motion to Dismiss the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all facts alleged by the plaintiff. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). However, on a jurisdictional question, when two affidavits cannot be reconciled, "the trial court will have to hold a limited evidentiary hearing in order to determine the jurisdiction issue." *Venetian Salami v. J.S. Parthenais,* 554 So.2d 499, 503 (Fla. 1989).

Since these conflicting affidavits cannot be reconciled without a factual determination, whether the Court denies Defendant's Motion to Dismiss, a limited evidentiary hearing will be held on the affidavits to determine the jurisdictional issue.

Accordingly, after a careful review of the record and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that a limited evidentiary hearing will be held to reconcile the two conflicting affidavits on the jurisdictional issue. The undersigned Judge does hereby refer the aforementioned jurisdictional issue to the Honorable Barry L. Garber, United States Magistrate Judge for the Southern District of Florida, for the purpose of conducting an evidentiary hearing on the disputed issue of fact set forth above; making appropriate findings of fact, conclusions of law, and final decision on Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (DE # 15).